[S. F. No. 6707.    Department One.—December 17, 1915.]

# HIHN–HAMMOND LUMBER COMPANY, a Corporation, Respondent, v. R. W. ELSOM et al., Respondents; THOMAS J. GUILFOY et al., Appellants.

Mechanics' Liens—Constitutional Law—Preference of Laborers and Materialmen Over Subcontractors.—Section 1194 of the Code of Civil Procedure, as it existed prior to the amendments of 1911 to the mechanics' lien law, in so far as it gave a preference to laborers and materialmen over subcontractors in participation in the amount applicable to liens, was not unconstitutional.

Id.—Subcontractor Defined—Furnishing Material for and Erecting Part of Building.—The meaning of the term "subcontractor," as used in the then existing mechanic's lien law, must be determined by reference to the classification of liens then made by section 1194 of the Code of Civil Procedure, and embraces all persons who agree with the original contractor to furnish the material and construct for him on the premises some part of the structure which the original contractor has agreed to erect for the owner.

Id.—Comparative Cost of Labor and Materials.—Something more than a mere comparison of the cost of the labor of attaching materials to the building with the total price of the work and materials is necessary in many cases to determine whether a claimant is a subcontractor or a materialman. Generally speaking, one who, under an agreement with the contractor, enters upon the premises, and there, with materials furnished by himself, erects a definite part of the structure composing the building, is a subcontractor, within the meaning of the section, regardless of the comparative cost of labor and materials.

Id.—Various Persons Deemed Subcontractors.—All those persons are to be deemed subcontractors who respectively agree with the contractor for the erection of a building to do the lathing and plastering and to furnish the material therefor; or to furnish the material and construct in the building, a considerable part of the floors and walls thereof; or to furnish the necessary tile and erect a part of the walls of the bathrooms; or to furnish the material and put on the building a tile roof; or to furnish and lay the flooring in certain rooms; or to furnish the materials and erect in the building the tin, galvanized iron, and copper work required by the plans and specifications.

Id.—Erection of Fireplaces—Finding that Person is Subcontractor—Appeal.—A finding that a person who agreed with the contractor to build certain fireplaces in the building, using brick

and tile, was a subcontractor, will not be disturbed on appeal, where there is nothing in the record to show that such fireplaces did not constitute a substantial part of the building, or of making a comparison of the cost of the labor with the total cost of the fireplaces.

Id.—Finding as to Laborers and Materialmen.—A finding that certain lien claimants were materialmen and laborers, which is sustained by their respective claims of lien, will not be disturbed on appeal, when there is no evidence to the contrary in the record.

APPEAL from a judgment of the Superior Court of Santa Cruz County, and from an order refusing a new trial. Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

W. P. Netherton, for Appellants.

Wyckoff & Gardner, for Respondent Hihn-Hammond Lumber Co.

H. A. Van C. Torchiana, W. P. Netherton, Charles B. Younger, I. F. Chapman, Charles M. Cassin, C. R. Taylor, Rittenhouse & Johnston, Greg S. McEvers, A. E. Bolton, and W. M. Gardner, for Various Defendants.

SHAW, J.—A number of persons, each claiming a mechanic's lien on the same property, began separate actions to foreclose the liens. These actions were consolidated for trial and resulted in a joint judgment of foreclosure. The building, on account of which the liens accrued, was erected prior to the enactment of the amendment of 1911 to the mechanic's lien law, in pursuance of a contract which was valid under the prior law. The liens amounted to more than the balance found due from the owner to the contractor. This made it necessary to apportion the balance to the respective claimants, and to declare the rank of each lien and the order of its payment out of the fund. Six of the lien claimants, namely, Thomas J. Guilfoy, Waterhouse-Price Company, Floodberg & McCaffery, W. W. Montague & Company, N. Clark & Sons, and Ford & Malott, being dissatisfied with the rank assigned to them by the judgment, have appealed from the judgment and from an order denying their motion for a new trial.

The court found that each of these appellants was a subcontractor, and, for that reason, assigned them a rank sub-

ordinate to that of laborers and materialmen. The provisions
of section 1194 of the Code of Civil Procedure, as it then
existed, declared that laborers and materialmen should have
preference over subcontractors in participation in the amount
applicable to liens under that law.

The first point urged by the appellants is that section 1194,
in so far as it gives such preference to laborers and material-
men, is unconstitutional. This question was considered by
this court in *Miltimore* v. *Nofziger etc. Co.*, 150 Cal. 790, [90
Pac. 114]. It was there declared that the section did not
violate the constitution by reason of this preference, but only
so far as it gave laborers a preference over materialmen.
Some members of the court dissented on the ground that the
priorities given to laborers over materialmen was valid. But
there was no difference of opinion regarding the power of the
legislature to prefer these two classes to subcontractors. We
are not disposed to go over the ground again to demonstrate
the soundness of this decision. Upon the authority thereof
we hold that the point is not well taken.

Another proposition advanced in support of the appeal is
that the findings of the court, with respect to each of the appel-
lants, that it was a subcontractor and not a materialman, are
contrary to the evidence.

The facts relating to each of them are as follows: The build-
ing erected was a large two-story dwelling-house. The con-
tract price was $27,635.20. R. W. Elsom & Company were
the contractors for the erection of the building. Guilfoy
agreed to furnish and set in place in the building "all tin,
galvanized iron, and copper work, including copper sash bars,
galvanized iron caps, copper flashings at back of wall, two
rows of cross-bars and a half bar at wall line, the full length,"
all according to the plans and specifications of the building
prepared by the architect. The cost of the material for this
work amounted to $943.50. The cost of the labor was $247.50.
The Waterhouse-Price Company agreed to furnish the tile for
the walls of four bathrooms and a toilet and set the same in
the building, the setting to be done by experienced workmen
from San Francisco, all as required by the plans and specifi-
cations. The material therefor amounted to $227.50 and the
labor, $37.50. Floodberg & McCaffery agreed to furnish the
material and labor necessary to complete the lathing and
plastering upon the building according to specifications at-

tached to the contract.   The material amounted to one thousand six hundred dollars, and the labor to $1,363.20.   Montague & Company agreed to furnish and place in the building 360 square feet of tile for the front porch, 250 square feet of tile and the cove around the walls with plinth blocks at doors, for four bathrooms and floors of toilets on the second floor; also to furnish the materials and place in the building four fireplaces made of brick or tile in different rooms in the building and to place 75 square feet of tile and wire spaces in the pantry.   For all this the material amounted to five hundred dollars and the labor to $423.   Clark & Sons agreed to deliver and lay in place the tile roof with scalloped iron at the eaves, in accordance with the plans and specifications. The material amounted to $1,350 and the labor $335.   Much of the tile had to be cut and fitted on the premises.   Ford & Malott agreed to lay the fiber stone flooring and furnish the material therefor in the breakfast-room and on the south and west lower porches.   The material amounted to $340 and the · labor to three hundred dollars.

The question whether one who claims a lien upon a building is a contractor or materialman has been several times considered by the court.   A brief statement of the cases in which the decisions have been rendered will assist in elucidating the principles to be applied.   In *Hinckley* v. *Field's Biscuit etc. Co.*, 91 Cal. 139, [27 Pac. 594], it was held that one who constructs, before delivery, "a steam plant consisting of boilers, engine, heater, feed-pipe, etc.," for a cracker factory, delivers them and puts them in place in the factory building, is a materialman, and not a contractor.   It was said that the work of putting these materials in place "was only the completion of their contract to deliver such finished machinery."   In *Roebling's Sons Co.* v. *Humboldt Electric Light etc. Co.*, 112 Cal. 290, [44 Pac. 568], the same rule was made concerning a contract to make and set up ready for use in a building an electrical plant "consisting of dynamos, converters, switchboard, lamps, etc., with the necessary wiring and connections," although in order to set them up it was necessary to put in the building a foundation for the dynamos and to install the wires and lamps.   In *Bennett* v. *Davis*, 113 Cal. 337, [54 Am. St. Rep. 354, 45 Pac. 684], the same rule was followed with respect to a contract to furnish mantels, tiles, and grates and set them in a building under construction.   Each tile pertain-

ing to the mantels had to be set in separately and some brick-laying around the mantels was necessary as a part of the setting thereof. In *Bryson* v. *McCone,* 121 Cal. 153, [53 Pac. 637], the court held that a person contracting to build ice tanks, including steel molds, pipes, pumps, and connections, and to set them up in an ice factory, was a materialman, and not an original contractor.

In *Smith* v. *Bradbury,* 148 Cal. 41, [113 Am. St. Rep. 189, 82 Pac. 367], it was held that one who contracted to do the plastering in a building at a stated price per yard was a sub-contractor, and not a materialman. So in *La Grill* v. *Mallard,* 90 Cal. 373, [27 Pac. 294], one who contracted to paper and decorate a number of rooms in a dwelling-house, where the actual work was done by employees, was held to be an original contractor. The only rule of general application announced in any of the above-mentioned decisions was stated in *Bennett* v. *Davis,* 113 Cal. 339, [54 Am. St. Rep. 354, 45 Pac. 685], ·as follows: ''The main consideration after all is whether the labor bestowed upon the article (in setting) was simple and trifling in comparison to the price.''

Literally, a subcontractor is one who agrees with another to perform a part or all of the obligation which the second party owes by contract to a third party. With respect to the mechanic's lien law in question, however, the word has a much narrower meaning. Section 1194 divides the liens which can be asserted against property under the mechanic's lien law into four classes, to wit, laborers, materialmen, subcontractors, and original contractors. The meaning of the term ''sub-contractors,'' as there used, must be determined by reference to this classification and to the subject to which it relates. The original contractor is the person who agrees with the owner to construct a building on his property. Those who perform labor in the construction of the building come within the first class, as laborers. Persons who merely furnish ma-terial to the contractors to be used, and which are used, in the construction of the building come within the second class, as materialmen. The term ''subcontractor'' embraces all per-sons who agree with the original contractor to furnish the material and construct for him on the premises some part of the structure which the original contractor has agreed to erect for the owner. We think something more than a mere comparison of the cost of the labor of attaching material to

the building with the total price of the work and materials is necessary in many cases to a determination of the question whether a claimant is a subcontractor or a materialman. Generally speaking, it would be held that one who, under an agreement with the contractor, enters upon the premises and there, with material furnished by himself, erects a definite part of the structure composing the building, is a subcontractor within the meaning of this section, regardless of the comparative cost of labor and material. The cases above cited which hold the claimant to be a materialman, go upon the theory that the claimant agreed with the owner or the con-tractor to construct, outside of the building, or away from the premises, some completed article, machinery, or apparatus to be thereafter placed in or attached to the building by the person who furnished it. The contention was that the work of attaching it to the building constituted a part of the construction of the building itself, and, therefore, made the claimant either an original contractor with the owner or a subcontractor with the contractor. The substance of the decisions is that the work of attaching and placing the thing in the building was merely a part of the delivery, and that the essence of the agreement was to furnish a finished article as material to be placed in the building. But in the other cases it was clear that the work of the claimant was that of constructing a part of the building itself with his own materials, under an agreement with the original contractor, and he was held to be a subcontractor.

Under the decision in *Smith* v. *Bradbury*, 148 Cal. 41, [113 Am. St. Rep. 189, 82 Pac. 367], there can be no doubt that the status of Floodberg & McCaffery, who did the lathing and plastering and furnished the material therefor, was that of a subcontractor. The work of Montague & Company consisted of furnishing the material and constructing in the building a considerable part of the floors and walls thereof. The Waterhouse-Price Company was to furnish the necessary tile and erect a part of the walls of the bathrooms. Clark & Sons, a corporation, was to furnish the material and put on the building a Mission tile roof. Ford & Malott were to furnish and lay the flooring in certain rooms. All these constituted substantial and important parts of the building and of the work of constructing it. These parties were, in our opinion, subcontractors, under the principles we have just stated. It

is somewhat difficult to determine, from the meager record on the subject, what part of the building was constructed by the claimant Guilfoy. Enough appears to show that he was to furnish the materials and erect in the building the tin work, galvanized iron, and copper work required by the plans and specifications. The plans and specifications are not set forth in the record. It is at least not improbable that the metal work of this character constituted a substantial part of the structure. If so, Guilfoy would be a subcontractor within the rules above stated. As all intendments are in favor of the decision of the court below, and no evidence of a different condition is presented by the record, we must sustain the finding that Guilfoy was a subcontractor.

In *Bennett* v. *Davis,* 113 Cal. 337, [54 Am. St. Rep. 354, 45 Pac. 684], the claimant, who contracted to furnish mantels for the building with the tiles and grates connected therewith and to set them all in the building, was held to be a material-man. A part of the work of Montague & Company consisted of the building of four fireplaces in the house, using brick and tile. This work is in some respects similar to that which was held to be the furnishing of materials in *Bennett* v. *Davis.* But here we have no plans or specifications or other description of the work, and we cannot say that the fireplaces did not constitute a very substantial part of the structure of the building in question. In *Bennett* v. *Davis* the mantels, which are usually finished outside as a complete structure and thereafter taken to and set in the building by the person who makes them, were the principal subject of the agreement, and the setting was a mere incident and of very slight cost compared with the price of the mantels. It was in this case that the court said that the comparison of the labor of setting with the price was the main consideration. The work done by Montague & Company constituted nearly half of the sum they were to receive for furnishing the material and erecting these porch floors, fireplaces, and other things in the building. The cost of the different parts of their job is not stated. There is, therefore, no means of making comparison of the cost of the labor with the total cost of the fireplaces, and we cannot interfere with the finding that they were subcontractors.

The appellants further contend that certain other claimants, namely, Faneuf & Heath, Wessendorf & Staffler, Bright Bros.,

and the Daniels Santa Cruz Transfer Company, were erroneously ranked as materialmen or laborers when they should have been classed as subcontractors. Their claims were small, amounting in all to $181.79. Each of these parties filed a claim of lien, stating that they, respectively, had performed labor on the building. The claim of Faneuf & Heath states that they performed certain labor in the construction of the house and also that they furnished certain materials which were used therein. There is nothing in the record to show the character of the work done by either of these claimants, or of the materials they furnished. The finding is sufficiently sustained by the respective claims of lien, and, as there is no evidence to the contrary in the record, the findings must be upheld.

The judgment and order are affirmed.

Sloss, J., and Lawlor, J., concurred.