[L. A. No. 25221. In Bank. May 20, 1960.]

J. W. THEISEN et al., Appellants, v. COUNTY OF LOS ANGELES et al., Respondents.

Wellborn, Barrett & Rodi, Frank C. Hubbard and James D. Doggett for Appellants.

Harold W. Kennedy, County Counsel, Edward A. Nugent, Deputy County Counsel, Bodkin, Breslin & Luddy and E. E. Hitchcock for Respondents.

SCHAUER, J.—Plaintiffs-cross-defendants appeal from a judgment which is adverse to them in their action for declaratory relief and which awards defendant-cross-complainant, the county of Los Angeles, $648 in its cross-action on the obligation of a release bond. Plaintiffs-cross-defendants are the copartners in a firm (hereinafter sometimes called Theisen) which was the general contractor on a county construction job and Theisen's surety on such bond. In reliance on the bond the county released to Theisen $648 which it had withheld pursuant to a stop notice. Defendants are the county, its auditor, and Durand, a materialman who filed the stop notice and thereafter recovered $648 from the county in a municipal court action (to which plaintiffs were not parties) on the claim which was the basis of his stop notice. Plaintiffs brought the present action for a declaration of the rights and obligations of the parties under the bond and the municipal court judgment and the county brought the cross-action on the obligation of the bond.

On evidence which is without material conflict the superior court found the facts, made conclusions of law which reject plaintiffs' legal position in this controversy, and rendered the judgment from which plaintiffs have taken this appeal. We have concluded that the judgment should be affirmed.

The principal burden of plaintiffs' argument is (a) that the municipal court judgment, for various asserted reasons, does not conclusively determine, so far as the obligation of plaintiffs-indemnitors is concerned, that their indemnitee, the county, was liable to Durand, and therefore plaintiffs can defend against the county's cross-action on plaintiffs' bond by showing that there was a good defense which could have been presented in the municipal court action, namely, that Durand, as the supplier of material to a materialman, was not entitled to avail himself of the stop notice provisions of the Code of Civil Procedure (§§ 1190.1-1192.1),[1] and (b) even

---

[1]These sections, at the time of the filing of the stop notice (June 13, 1955), provided in material part as follows:

Section 1190.1: "(a) Any of the persons mentioned in Sections 1181 [which provides for a lien of "Mechanics, materialmen, contractors, subcontractors, artisans, architects, machinists, builders, teamsters and draymen, and all persons . . . performing labor upon . . . or furnishing materials to be used . . . in . . . the construction, alteration . . . or repair . . . of, any building . . . or other work of improvement"] and 1184.1 [which provides for a lien of those improving lots or adjoining streets or sidewalks], except the contractor, and all persons . . ., excluding the contractor, performing work or furnishing materials . . . upon any public improvement, . . . may . . . give to the owner, a notice that

if it is determined that plaintiffs are liable to the county on their bond, Durand should be required to pay such liability because he wrongfully used the stop notice procedure to cause the $648 to be withheld and paid to him pursuant to the municipal court judgment.

The material facts are as follows: The county let a contract to Theisen for the construction of a work of public improvement (a fire combat training center). In performing the contract Theisen contracted with Petterson Corporation (not a

---

they have performed labor or furnished materials . . . to the contractor or other person acting by the authority of the owner . . .

"(c) Upon such notice being given it shall be the duty of the person to whom such notice is given to, and he shall withhold from his contractor or from any person acting under his authority and to whom said labor or materials . . . have been furnished . . . sufficient money . . . due or that may become due to such contractor to answer such claim and any lien that may be filed therefor, and, if the owner is a public body whose property, by reason of public policy or otherwise, is not subject to the liens in this chapter [ch. 2, tit. 4, pt. 3, governing liens and stop notices of mechanics and others] provided for, also the reasonable cost of any litigation thereunder. . . .

"(g) The word 'owner' as used in this section, includes the State . . . or any political subdivision thereof . . ." (Stats. 1951, ch. 1159, § 1, as amended Stats. 1951, ch. 1382, § 1.)

Section 1191.1: "If the contractor, subcontractor, or other person against whom any claim is filed, as provided in the preceding section or as provided in Section 1192.1 of this code, shall dispute the correctness or validity of any claim so filed, it shall be lawful for the public agency . . . concerned, at its . . . discretion, to permit the contractor to whom said contract was awarded to deliver to such public agency . . . a bond . . ., which bond shall guarantee the payment of any sum which said claimant may recover on said claim together with his costs of suit in said action, if he shall recover therein, and upon filing of said bond . . . then such agency . . . shall not withhold any moneys from such contractor on account of such claim. . . ." (Stats. 1951, ch. 1159, § 1.)

Section 1192.1: "(a) Any materialman or person furnishing . . . supplies used in . . . the performance of work . . . to which Chapter 3 of Division 5, Title 1 of the Government Code [providing for contractors' bonds for public work, such bonds to inure to the benefit of stop notice claimants under § 1192.1] applies, or any person . . . who performed work . . . upon the same . . ., and whose claim has not been paid by the contractor or person to whom the contract has been awarded, or by the subcontractors of the contractor or person, may . . . file with the public agency . . . a verified statement of such claims, together with a statement that the same have not been paid. . . .

"(f) If the contractor, subcontractor, or other person against whom any claim is filed as provided in this section disputes the correctness or validity of any claim so filed, the . . . public disbursing officer . . ., in . . . his discretion, may permit the contractor to whom the contract was awarded to deliver to such . . . officer a bond . . ., which bond shall guarantee the payment of any sum which the claimant may recover on the claim together with his costs of suit in the action, if he recovers therein. Upon the filing of the bond by and with the consent of such . . . officer, then such . . . officer shall not withhold any moneys from the contractor on account of the claim. . . ." (Stats. 1951, ch. 1159, § 1.)

party to this action) for Petterson to supply 64 custom made doors to conform to architect's specifications. Petterson then contracted with defendant Durand for Durand to supply 20 of such doors for $1,148. Durand, obedient to the contract, fabricated and shipped the doors to Petterson and Petterson paid Durand $600 on account. (The unpaid balance of $548 occasions this litigation.) Theisen took delivery of the 64 doors at Petterson's plant and paid Petterson in full without asking for proof of releases by Petterson's suppliers. Theisen installed the doors. Neither Durand nor Petterson entered upon the job site.

Petterson defaulted in payment of the $548 due Durand. On June 13, 1955, Durand filed with the county a stop notice which designated Petterson as a "subcontractor" of Theisen and notified the county to withhold from any money due Theisen "a sum sufficient to satisfy this claim including the reasonable cost of any litigation thereunder, as provided in Section 1184 and Section 1184-e of the Code of Civil Procedure."[2] On the basis of this notice the county withheld from Theisen $548 plus $100 to cover the cost of litigation.

On January 3, 1956, in the municipal court, Durand sued the county, its auditor, and Petterson to enforce Durand's claim under the stop notice. Neither Theisen nor its surety was made a party to the municipal court action. However, Theisen, during the statutory period (specified in Code Civ. Proc., § 1197.1) for the filing of an action to enforce the claim of the stop notice, telephoned the office of the county auditor and learned that Durand had filed such an action, and a Theisen partner read the file of such action and spoke with Petterson's attorney concerning it.

On February 16, 1956, Theisen (principal) and its surety, with actual knowledge of such action, executed and delivered to the county (obligee) the "Bond to Release Money Withheld on Stop Notice." The bond provides that Theisen and its surety are bound to the county in the sum of $685 and that "THE CONDITION OF THE ABOVE OBLIGATION Is SUCH, That

"WHEREAS, the said Principal . . . entered into a written contract [for the construction of the public work] . . .

"WHEREAS, a certain stop-notice has been filed against pay-

---

[2] Former sections 1184 and 1184e had been repealed by Stats. 1951, ch. 1159, § 4. Such sections are in part the basis of sections 1190.1 and 1192.1 of the Code of Civil Procedure, added by Stats. 1951, ch. 1159, § 1, and quoted *supra*, footnote 1.

ments which are due the said Principal in connection with said contract, to wit: DURAND DOOR SUPPLY.

"WHEREAS, the said Principal disputes the correctness and validity of said claims so filed, and desires that the funds now due him under the provisions of said contract shall be delivered to him notwithstanding said stop-notice.

"Now, THEREFORE, if the . . . Principal shall fully protect the Obligee herein against any loss by reason of or arising out of the acceptance of this bond, or the release of said moneys, or the payment thereto [sic] to said Principal, and shall pay any sum which said claimants may recover on said claims, together with the costs of suit in said action [this is the only mention in the bond of an "action"], . . . then this obligation shall be void, otherwise it shall be and remain in full force and effect.

"This bond is given and accepted under . . . Section 1194.1 of the Code of Civil Procedure."[3] In reliance on the
2 (f)
bond the county paid Theisen the $648. It did not request Theisen or its surety to participate in the defense of Durand's pending action.

A partner in the Theisen firm was present at the trial of Durand's action and spoke to the judge as to the proposed judgment. Petterson failed to appear at the trial. On April 2, 1956, Durand, in such municipal court action, recovered a money judgment against the county and its auditor for $548 plus $100 on account of attorney fees, and a money judgment for $548 plus interest and costs against Petterson. Pursuant to such judgment the county paid Durand $648. The county then demanded and Theisen and its surety refused reimbursement of the county in the sum of $648. The present action followed.

As already indicated, plaintiffs urge that Durand's municipal court judgment does not conclusively adjudicate the liability of the county (plaintiffs' indemnitee) to Durand and that therefore they can present in the present cross-action of the county against them the defense that Durand was not entitled to avail himself of the stop notice procedure. Because we have concluded, for the reasons hereinafter stated, that Durand properly invoked the stop notice remedy, we do not pass upon and need not here set forth plaintiffs' arguments

[3] As appears *supra*, footnote 1, section 1192.1 (including subd. (f)) relates only to stop notices as to public work; section 1191.1 concerns stop notices as to private as well as public work.

in support of their claim that the municipal court judgment is not conclusive as to them.

The trial court, rejecting plaintiffs' contention that Durand was not one of the persons to whom the stop notice remedy is available, determined that Petterson under its agreement with general contractor Theisen was "a sub-contractor for all the purposes set forth in California Code of Civil Procedure section 1182,[4] in reference to said work of improvement." Manifestly, if Petterson, to whom Durand furnished materials, was "a sub-contractor," as determined by the trial court, then Durand properly invoked the stop notice remedy pursuant to subdivision (a) of either section 1190.1 or section 1192.1 of the Code of Civil Procedure, *supra*, footnote 1. Plaintiffs, however, urge that upon the undisputed facts Petterson as a matter of law was itself only a materialman, not an agent or subcontractor of general contractor Theisen. Plaintiffs rely upon the rule that one who sells materials to a materialman is not entitled to a mechanic's lien. (*Wilson* v. *Hind* (1896), 113 Cal. 357, 359 [45 P. 695]; *John A. Roebling's Sons Co.* v. *Humboldt etc. Co.* (1896), 112 Cal. 288, 292 [44 P. 568]; *Harris & Stunston* v. *Yorba Linda C. Assn.* (1933), 135 Cal.App. 154, 156 [26 P.2d 654]; *L. W. Blinn Lbr. Co.* v. *American Cement Products Co.* (1921), 51 Cal. App. 479, 481 [197 P. 142].)

In answer to this contention of plaintiffs the county presents the following argument, among others: A work of public improvement cannot be subjected to a mechanic's lien; the stop notice procedure, available as an alternative to the lien remedy in cases of private construction, is the only such remedy which can be had in cases of public work. (*Clark* v. *Beyrle* (1911), 160 Cal. 306, 311 [116 P. 739].) Recognizing the necessity that public property should not be subject to liens on the one hand, and the desirability of encouraging private persons to contribute work or material to public improvements on the other hand, the Legislature (according to the county) made the stop notice procedure which applies

---

[4]Section 1182 provides in material part that "(b) For the purpose of this chapter [ch. 2, tit. 4, pt. 3, which provides for liens and stop notices of mechanics and others, and includes §§ 1190.1-1192.1, *supra*, footnote 1], except as otherwise provided herein, 'work of improvement' and 'improvement' mean the entire structure or scheme of improvement as a whole.

"(c) For the purposes of this chapter, every contractor, subcontractor, architect, builder, or other person having charge of the construction . . ., in whole or in part, of any building or other work of improvement shall be held to be the agent of the owner."

to public works only (Code Civ. Proc., § 1192.1) available to those who supply materials to a materialman, that is, to a class of claimants who cannot avail themselves of a mechanic's lien (Code Civ. Proc., § 1181) or of the general stop notice procedure which applies to both private and public work (Code Civ. Proc., § 1190.1).

This argument of the county has no support in the language of the mechanic's lien law and the concomitant stop notice provisions and its acceptance would lead to confusion in the administration of the security remedies available to materialmen, artisans and laborers. ▮▮ Mechanic's liens are available to those who do work or furnish materials, ''whether done or furnished at the instance of the owner or of any person acting by his authority or under him, as contractor or otherwise.'' (Code Civ. Proc., § 1181.) ▮▮ The stop notice procedure which applies to both private and public work (Code Civ. Proc., § 1190.1, subd. (a)) is available to those who ''have performed labor or furnished materials, or both, to the contractor or other person acting by the authority of the owner.'' ▮▮ The stop notice procedure which applies to public works only (Code Civ. Proc., § 1192.1, subd. (a)) is available to any person who supplies labor or materials ''and whose claim has not been paid by the contractor or person to whom the contract has been awarded, or by the subcontractors of the contractor or person.'' ▮▮ Although the just quoted wording of the various sections differs somewhat, all are coordinated by section 1182 (subd. (c)), which provides that the statutory ''agent of the owner,'' that is, the one whose suppliers can have the lien and stop notice remedies where the circumstances are otherwise appropriate, includes ''every contractor, subcontractor, architect, builder or other person having charge of the construction . . . , in whole or in part, of any building or other work of improvement.''

▮▮ The legislative and judicial history of the mechanic's lien law fortifies our conclusion that the stop notice procedure under section 1192.1, which applies to public work only, is not available to those whose relationship to the work is only that of a vendor of materials to a materialman. Such relevant history is as follows: The California statutes as to mechanic's liens have been often amended since the first such law was enacted in 1850; usually but not always they have included provisions for notice to withhold; sometimes the giving of

such notice made withholding mandatory and sometimes optional. In the following versions of the law prior to adoption of the codes in 1872, there was no mention of public works and no suggestion that the stop notice procedure was available to a more extended class of claimants than those who had a lien: Stats. 1850, ch. 87, §§ 1, 2; Stats. 1855, pp. 156-157, §§ 1, 4; Stats. 1856, p. 203, §§ 1, 3; Stats. 1862, pp. 384-385, §§ 1, 5. For a time the mechanic's lien law (Stats. 1868, p. 589, and the Code of Civil Procedure as enacted in 1872) did not provide for the procedure of notice to withhold.

Former section 1184 of the Code of Civil Procedure as amended by Stats. 1885, p. 144, for some years provided for a stop notice procedure available to mechanic's lien claimants "except the contractor," without express mention of public construction. This stop notice remedy (but not the lien remedy) could be invoked in cases of public works. (*Bates* v. *Santa Barbara County* (1891), 90 Cal. 543, 546 [27 P. 438].) The class of claims which could be enforced by "garnisheeing" money owed the contractor which remained in the hands of the owner was identical with the class of claims which, in the case of private work, could be enforced also by a lien against the property. (*Bianchi* v. *Hughes* (1899), 124 Cal. 24, 28 [56 P. 610].) And the last mentioned class did not include one who supplied material to a materialman. (*Wilson* v. *Hind* (1896), *supra*, 113 Cal. 357, 359.)

Express statutory recognition of a stop notice procedure applicable to public works was first made by Stats. 1921, ch. 144, which amended former section 1184 of the Code of Civil Procedure to provide that the notice to withhold could be given by "all persons . . ., excluding the contractor, performing work or furnishing materials or both, upon any public improvement." The 1921 amendment evidenced no intention that the class of claims enforcible by the stop notice remedy in the case of public work should be greater than that enforcible by either lien or stop notice in the case of private work.

A separate code section applicable to public work only, former section 1184e (the statutory predecessor of § 1192.1), was added to the Code of Civil Procedure by Stats. 1943, ch. 139, by the same session of the Legislature which established the Government Code (Stats. 1943, ch. 134). Former section 1183 of the Code of Civil Procedure then provided (as it had since Code Amendmts. 1873-1874, p. 409, and as section 1182 now in substance provides) that "every contractor,

subcontractor, architect, builder or other person having charge of the construction . . . in whole or in part of any building or other improvement . . . shall be held to be the agent of the owner for the purposes of this chapter." Former section 1184e indicated no legislative intention to add materialmen to these statutory agents of the owner in those cases only of the government contracts for public work referred to in such section 1184e. And the subsequent 1951 revision of the law as to mechanic's liens and stop notices was legislatively stated to be "only a formal revision," not "an alteration in the public policy or legislative intent regarding such law, nor in the meaning or substance thereof" (Stats. 1951, ch. 1159, § 5). (A subsequent substantive change in section 1190.1 of the Code of Civil Procedure by Stats. 1951, ch. 1382, making withholding pursuant to stop notice mandatory rather than optional, is not material to the problem under discussion.)

The controlling question here is whether the trial court correctly determined that Petterson, which contracted with the general contractor to furnish 64 custom made doors, was "a sub-contractor for all of the purposes set forth in California Code of Civil Procedure section 1182 [quoted *supra*, footnote 4]" as determined by the trial court. Plaintiffs' contention that Petterson, upon the undisputed facts, is a materialman rather than a subcontractor rests largely upon the statement in *Hihn-Hammond Lbr. Co.* v. *Elsom* (1915), 171 Cal. 570, 575 [154 P. 12, Ann. Cas. 1917C 798], that a subcontractor is "one who, under an agreement with the contractor, *enters upon the premises* and there, with material furnished by himself, erects a definite part of the structure composing the building." (Italics added.) Also plaintiffs emphasize that, although the California cases do not discuss the necessity, as an element constituting one a subcontractor, of performing work on the job site, plaintiffs have found no California decision which determines that one who did no work there is a subcontractor or contractor rather than a materialman. On the other hand a number of California cases cited by plaintiffs (footnote 5, *infra*) have held that a person is a materialman rather than a contractor or subcontractor even though he has performed considerable labor on the site. (These results of plaintiffs' research are confirmed by defendants' and our research.)

The Hihn-Hammond case discussed the distinction between subcontractors and materialmen for the purpose of former section 1194 of the Code of Civil Procedure (as amended by

Stats. 1885, p. 145) which ranked lien claimants in the following order: "1. All persons performing manual labor . . . 2. Persons furnishing materials. 3. Subcontractors. 4. Original contractors."

It was said (pp. 574-575 of 171 Cal.): "The term 'subcontractor' embraces all persons who agree with the original contractor to furnish the material and construct for him on the premises some part of the structure which the original contractor has agreed to erect for the owner. We think something more than a mere comparison of the cost of the labor of attaching material to the building with the total price of the work and materials is necessary in many cases to a determination of the question whether a claimant is a subcontractor or a materialman. [Cf. *Bennett* v. *Davis* (1896), 113 Cal. 337, 339 [35 P. 684, 54 Am.St.Rep. 354], stating that one who furnishes and installs material is a materialman rather than a contractor where the labor "was simple and trifling in comparison to the price." In the Hihn-Hammond case each of the claimants held to be a subcontractor furnished material which cost more—in some instances many times more—than the cost of the labor to install it.] Generally speaking, it would be held that one who, under an agreement with the contractor, enters upon the premises and there, with material furnished by himself, erects a definite part of the structure composing the building, is a subcontractor within the meaning of this section [former § 1194], regardless of the comparative cost of labor and material. The cases . . . which hold the claimant to be a materialman,[5] go upon the theory that the claimant agreed with the owner or the con-

---

[5]*Bryson* v. *McCone* (1898), 121 Cal. 153, 156 [53 P. 637], holding that one who under contract with the owner constructed and installed the tanks and furnished and set up the machinery comprising an ice plant according to detailed specifications was a materialman rather than an original contractor and therefore his contract was not within the requirement of former section 1183 of the Code of Civil Procedure that a builder's contract is void unless recorded; *Bennett* v. *Davis* (1896), *supra*, 113 Cal. 337, 338, holding that plaintiff, who under contract with defendant owner furnished the material for and installed a wooden mantel and a tile mantel composed of numerous pieces, and the tiles and grates connected therewith, was a materialman, and reversing a judgment based on the trial court's determination that plaintiff was entitled to a lien as an original contractor; *John A. Roebling's Sons Co.* v. *Humboldt etc. Co.* (1896), *supra*, 112 Cal. 288, 290, 291, holding that one who contracted with the owner to furnish and set up the apparatus comprising an electric plant, construct the foundation for the dynamos, and make the connections necessary to put the plant in operation was a materialman rather than a contractor, and therefore plaintiff, who sold material to such materialman, was not entitled to a lien; *Hinckley* v. *Field's Biscuit etc.*

tractor to construct, outside of the building, or away from the premises, some completed article, machinery, or apparatus to be thereafter placed in or attached to the building by the person who furnished it. The contention was that the work of attaching it to the building constituted a part of the construction of the building itself, and, therefore, made the claimant either an original contractor with the owner or a subcontractor with the contractor. The substance of the decisions is that the work of attaching and placing the thing in the building was merely a part of the delivery, and that the

---

*Co.* (1891), 91 Cal. 136, 140 [27 P. 594], a holding like that of the Bryson case (1898), *supra*, 121 Cal. 153, as to a steam plant.

In addition to the foregoing cases cited in Hihn-Hammond, the following decisions class one who did considerable work on the premises as a materialman:

*Phillips & Edwards Elec. Corp.* v. *Shintaffer* (1956), 143 Cal.App.2d 561, 563 [2] [299 P.2d 912], upholding the trial court's finding upon conflicting evidence that Universal Corporation, to which plaintiff sold a control panel for use in a rice drying plant, was a materialman. Universal agreed with the owner "to engineer and purchase" all elevating and conveying equipment and to supervise the installation of the dryer. The District Court of Appeal cites the Roebling's, Bryson and Hihn-Hammond cases, *supra*, "for the proposition that where equipment is placed in a building constructed by another, the work done in placing the equipment is but the completion of the contract to deliver. The fact that certain planning or engineering was required in the instant case should not change this well established rule. Neither should the fact that Universal was to supervise the installation of the dryer change the result."

*California P. C. Co.* v. *Wentworth Hotel Co.* (1911), 16 Cal.App. 692, 704, 707 [118 P. 103, 113], upholding the trial court's determination that one who under contract with the owner furnished and installed elevators, and one who furnished and laid roofing, were materialmen and did not need to record their contracts under former section 1183.

See also *Pugh* v. *Moxley* (1912), 164 Cal. 374, 379 [128 P. 1037], repeating the test, rejected in the Hihn-Hammond case, that "If the value of the labor is small in comparison with that of the material, the claimant is a materialman," and applying such test to uphold the trial court's determination that one who under contract with the owner furnished and installed specified plumbing fixtures, and also one who furnished lumber from time to time as required and carted it to the job site, were materialmen who did not have to record their contracts under former section 1183.

The comparative value test was repeated in *Peterson* v. *Freiermuth* (1911), 17 Cal.App. 609, 614 [121 P. 299], as a dubious ground for the proper holding that one who agreed to raise (above street level), repair, and remodel buildings and furnish the labor and material therefor was an original contractor, not a materialman. Such test was again repeated in *Ferger* v. *Gearhart* (1919), 44 Cal.App. 245, 248 [3] [186 P. 376], as the basis of the holding that one who furnished and laid roofing under agreement with the owner must be regarded as only a laborer or materialman, not an original contractor (so that his lien claim was not filed in time under former section 1187 of the Code of Civil Procedure), because no proof was made of the respective value of the labor and material.

essence of the agreement was to furnish a finished article as material to be placed in the building. But in the other cases[6] it was clear that the work of the claimant was that of constructing a part of the building itself with his own materials, under an agreement with the original contractor, and he was held to be a subcontractor.''

The Hihn-Hammond case (pp. 575-576 of 171 Cal.) held that ''under the principles we have just stated'' certain lien claimants were properly ranked as subcontractors rather than materialmen or laborers because they furnished ''substantial and important parts of the building and of the work of constructing it'' under their agreements with the prime contractor. Such claimants included one who furnished and laid roofing (cf. *California P. C. Co.* v. *Wentworth Hotel Co:* (1911), supra, 16 Cal.App. 692, 707; *Ferger* v. *Gearhart* (1919), supra, 44 Cal.App. 245, 248 [3], holding that such claimants were materialmen) and one who furnished material for and installed fireplaces and floors (cf. *Bennett* v. *Davis* (1896), supra, 113 Cal. 337, 338, holding that one who furnished and installed mantels, grates, and tile work was a materialman). We have no doubt of the correctness of the decision in the Hihn-Hammond case, or of the propriety of its rejection of the view expressed in *Bennett* v. *Davis* (1896), supra, 113 Cal. 337, 339 (and repeated, after the Hihn-Hammond decision, in *Pugh* v. *Moxley* (1912), supra, 164 Cal. 374, 379; *Ferger* v. *Gearhart* (1919), supra, 44 Cal.App. 245, 248 [3]; and *Peterson* v. *Freiermuth* (1911), supra, 17 Cal.App.2d 609, 614) that the principal consideration constituting one a materialman rather than a subcontractor or contractor, where he furnishes and installs material, is that the value of the labor was slight as compared with the value of the material. However, the attempt in *Hihn-Hammond* to reconcile on their facts the cases cited therein and summarized in footnotes 5 and 6, supra, is not successful, for such cases are inconsistent among themselves. ▮▮▮ We need not here undertake to severally discuss and disapprove certain of those cases one by one in order to decide the present case; it is sufficient to point out that one who furnishes the material for, sets up, and connects a steam plant or an electric plant or a comparable installation in accord with the owner's requirements is not merely fur-

---

°*Smith* v. *Bradbury* (1905), 148 Cal. 41, 42 [82 P. 367, 113 Am.St.Rep. 189], holding that one who contracted with the owner to do all the plastering in a building was a contractor; *LaGrill* v. *Mallard* (1891), 90 Cal. 373, 376 [27 P. 294], a similar holding as to an agreement to furnish the wallpaper for and to paper the rooms of a house.

nishing materials and, as a bare incident of delivery, putting them in the building; although he may have fabricated some of his materials off the building site, he "erects a definite part of the structure composing the building" (p. 575 of 171 Cal.) as much as the plumbing contractor who furnishes and installs stock fixtures or the roofing contractor who lays stock shingles. Any declarations or implications of the above cited cases inconsistent with the following definitive holding are disapproved.

In our opinion the essential feature which constitutes one a subcontractor rather than a materialman is that in the course of performance of the prime contract he constructs a definite, substantial part of the work of improvement in accord with the plans and specifications of such contract, not that he enters upon the job site and does the construction there. We are not here concerned with the mere furnishing of materials from which doors were to be constructed by the general contractor nor are we interested in the sale of standard stock-in-trade doors. Specifically we are dealing with a contract whereby the doors were to be fabricated according to the specifications of the prime contract and as a constituent part of the construction of the public improvement which was the subject of the contract. We do not accept the view of some other jurisdictions (see annotation, 141 A.L.R. 321) that to be a subcontractor one must install work at the site of the improvement. Rather, we conclude that one who agrees with the prime contractor to perform a substantial specified portion of the work of construction which is the subject of the general contract in accord with the plans and specifications by which the prime contractor is bound has "charge of the construction" of that part of the work of improvement (Code Civ. Proc., § 1182, subd. (c)) and is a subcontractor although he does not undertake to himself incorporate such portion of the projected structure into the building. This view accords with that of *Holt & Bugbee Co.* v. *City of Melrose* (1942), 311 Mass. 424, 426 [41 N.E.2d 562]; *Illinois Steel Warehouse Co.* v. *Hennepin Lbr. Co.* (1921), 149 Minn. 157, 160 [189 N.W. 994]; *Pittsburgh Plate Glass Co.* v. *Sisters of the S. M.* (1901), 83 Minn. 29, 31-32 [85 N.W. 829]; see also *Timber Structures* v. *C.W.S. Grinding & Machine Works* (1951), 191 Ore. 231, 246-247 [229 P.2d 623]. It therefore appears that the trial court correctly determined that Petterson, who agreed with the general contractor to furnish 64 doors, custom made in accord with archi-

tect's specifications, was a subcontractor, and that Durand, who furnished 20 of those doors to the subcontractor, was entitled to invoke the stop notice procedure.

For the reasons above stated, the judgment is affirmed.

Gibson, C. J., Traynor, J., Spence, J., McComb, J., Peters, J., and White, J., concurred.