[No. C066827. Third Dist. Dec. 5, 2011.]

EGGERS INDUSTRIES, Plaintiff and Respondent, v.
FLINTCO, INC., et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, only the Introduction, Factual and Procedural Background, parts II and III of the Discussion, and the Disposition are certified for publication.

## Counsel

Lax & Stevens, Paul A. Lax and Donna E. Kirkner for Defendants and Appellants.

Porter Law Group, William L. Porter and Conor H. McElroy for Plaintiff and Respondent.

Crawford & Bangs, E. Scott Holbrook, Jr., and Stephen M. Indergand for American Subcontractors Association as Amicus Curiae on behalf of Plaintiff and Respondent.

## Opinion

**ROBIE, J.**—Defendant Flintco, Inc. (Flintco), the general contractor on a public works project, contracted with Architectural Security Products (ASP) to provide custom doors for the project. ASP, in turn, contracted with plaintiff Eggers Industries (Eggers) to manufacture the doors. When ASP failed to pay Eggers fully for its services, Eggers sought to recover under the public works payment bond Flintco had obtained for the project, suing Flintco and the two bond sureties, defendants Fidelity and Deposit Company of Maryland and Federal Insurance Company.[1]

On Eggers's motion for summary judgment, the primary issue was whether ASP was a subcontractor or a materialman, as that issue was dispositive of whether Eggers was entitled to recover under the bond pursuant to Civil Code section 3248, subdivision (c). Eggers contended ASP was a subcontractor

---

[1] To the extent necessary, we will refer to Fidelity and Deposit Company of Maryland and Federal Insurance Company jointly as the sureties. We will refer to Flintco and the sureties jointly as defendants.

because "a material supplier charged with furnishing a significant amount of custom products in accord with the project plans and specifications is deemed to be a subcontractor" and "[a]s a material supplier to a subcontractor on a public works project, Eggers [wa]s entitled to recovery on the Bond." Defendants argued that because ASP did not install any of the materials it supplied for the project, ASP was a materialman, not a subcontractor, and "a material supplier to a material[man] does not have a claim against a public works payment bond."

The trial court agreed with Eggers and granted Eggers's motion for summary judgment. On defendants' appeal, we conclude the trial court was correct. To be a subcontractor rather than a materialman for purposes of recovery under a public works payment bond, one need not actually construct any part of the project, whether onsite or offsite. Instead, it is sufficient that the person or company "*agrees* with the prime contractor to perform a substantial specified portion of the work of construction which is the subject of the general contract in accord with the plans and specifications by which the prime contractor is bound." (*Theisen v. County of Los Angeles* (1960) 54 Cal.2d 170, 183 [5 Cal.Rptr. 161, 352 P.2d 529], italics added (*Theisen*).) The fact that the subcontractor in turn contracts with someone else for that person or company to actually perform the portion of the work the subcontractor has agreed with the general contractor to perform does not turn the subcontractor into a materialman. The subcontractor's status as a subcontractor must be determined based on what the subcontractor *agrees* to do, not what it actually ends up doing.

Because we agree that ASP was a subcontractor and not a materialman, and because we reject defendants' other challenges to the trial court's ruling as well, we will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

The Regents of the University of California sought bids for a public works construction project known as the Robert Mondavi Institute for Wine & Food Science. Thereafter, the Regents awarded the contract for the project to Flintco, making Flintco the original (or general) contractor on the project. (See Civ. Code, § 3095 ["any contractor who has a direct contractual relationship with the owner" of a project is an " '[o]riginal contractor' "].) In turn, Flintco entered into a contract with ASP under which ASP was to

---

[2] The underlying facts are taken from the undisputed facts established by Eggers in support of its summary judgment motion. As we will discuss further hereafter, defendants objected to much of the evidence underlying those facts, but the trial court overruled all of defendants' objections, and defendants have failed to properly challenge the trial court's evidentiary rulings on appeal.

furnish two types of doors—(1) flush wood doors and (2) stile and rail wood doors—and door hardware for the project according to the plans and descriptions prepared by the project architects. ASP was not responsible for installing the doors and hardware but was to deliver the goods to the jobsite.

ASP subsequently contracted with Eggers, a manufacturer of custom architectural wood products, to manufacture the doors. Ultimately, Eggers manufactured a total of 285 flush doors, 10 stile and rail doors, 177 trim pieces, 29 door jambs, and 101 frames for side lites and borrowed lites and shipped the products to the jobsite. Eggers billed ASP a total of $219,478.64 for the manufacture and delivery of the products, but ASP paid Eggers only $51,697.03 of that amount.

To secure the payment of claims of "laborers, mechanics, material suppliers, and other persons as provided by law," Flintco had obtained a public works payment bond from the sureties. When ASP failed to pay Eggers the total amount due for the products Eggers manufactured for the project, Eggers served the sureties with a claim on the bond for the amount that remained due ($167,781.61). Thereafter, Eggers filed a complaint against ASP, Flintco, and the sureties. As relevant here, Eggers asserted a cause of action against Flintco and the sureties for payment under the bond of the principal amount owed plus interest and attorney fees.[3]

Ultimately, Eggers moved for summary judgment, arguing that ASP was a subcontractor on the project because "a material supplier charged with furnishing a significant amount of custom products in accord with the project plans and specifications is deemed to be a subcontractor," and "[a]s a material supplier to a subcontractor on a public works project, Eggers [wa]s entitled to recovery on the Bond." In support of its argument, Eggers relied primarily on the California Supreme Court's decision in *Theisen*.

In opposing the motion, defendants argued that because ASP did not install any of the materials it supplied for the project, ASP was a material supplier, not a subcontractor, and "[a] material supplier to a material supplier does not have a claim against a public works payment bond." Defendants argued that *Theisen* was obsolete because of statutory changes that occurred since the case was decided in 1960 and, in any event, Eggers had failed to establish the elements of its cause of action with admissible evidence, and Eggers had failed to provide admissible evidence to prove its complaint was timely filed. As part of their opposition to the summary judgment motion, defendants submitted 86 written objections to Eggers's evidence. Overall, defendants'

---

[3] Eggers's complaint also included causes of action against ASP, but those causes of action are not at issue here.

approach to the motion was not to raise a triable issue of fact with contrary evidence but instead to show that Eggers had not carried its initial burden of establishing its entitlement to summary judgment.

As part of its reply, Eggers offered 185 pages of additional evidence, consisting of two additional declarations with attachments. The purpose of this additional evidence was to cure any deficiencies the court might find in Eggers's original evidentiary showing as a result of defendants' evidentiary objections.

Defendants filed an objection to Eggers's additional evidence, asserting that the court should disregard it or continue the hearing on the summary judgment motion for at least two weeks to allow them to file a written response and any additional evidence they deemed necessary. The parties subsequently stipulated to continue the hearing, and the court set it on the earliest date to which the parties had agreed. Despite this continuance, defendants did not file any response to the additional evidence or any further evidence themselves.

The trial court overruled all of defendants' evidentiary objections and concluded that Eggers had provided sufficient admissible evidence to prove all of the elements of its cause of action for recovery on the public works payment bond. The court also concluded that *Theisen* was still good law and that under *Theisen* ASP was a subcontractor, not a materialman. Accordingly, the court granted summary judgment in favor of Eggers.

From the resulting money judgment, defendants timely appealed.

## DISCUSSION

### I

### *Defendants' Forfeited Arguments*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

### *General Principles of Law for Recovery Under a Public Works Payment Bond*

█ "Public works payment bonds, governed by Civil Code section 3247 et seq., provide a cumulative remedy to unpaid subcontractors on public

---

[*]See footnote, *ante,* page 536.

works projects. 'Unlike private works contracts, an unpaid subcontractor on a public works project may not seek recovery from the real property. "[P]rinciples of sovereign immunity do not permit liens for persons furnishing labor or supplies on public property . . . ." [Citation.] In the place of a lien, the unpaid subcontractor may proceed against the general contractor by way of the payment bond requirements of Civil Code section 3247 et seq. These statutes " 'give to materialmen and laborers who furnish material for and render services upon public works an additional means of receiving compensation.' [Citation.]" ' [Citation.]

■ "Civil Code section 3248, subdivision (c) requires that public works payment bonds inure to the benefit of materialmen and subcontractors[5] of any tier of a public works project and that any such materialmen or subcontractors may maintain a direct action against the sureties. [Citations.] A surety's liability under a public works payment bond arises when a contractor fails to pay for work performed by materialmen or subcontractors under the contract." (*Oldcastle Precast, Inc. v. Lumbermens Mutual Casualty Co.* (2009) 170 Cal.App.4th 554, 563 [88 Cal.Rptr.3d 363].)

Despite the broad language of the court in *Oldcastle*, it is not true that "public works payment bonds inure to the benefit of materialmen and subcontractors of *any* tier of a public works project and that *any* such materialmen or subcontractors may maintain a direct action against the sureties." (*Oldcastle Precast, Inc. v. Lumbermens Mutual Casualty Co., supra,* 170 Cal.App.4th at p. 563, italics added.) Instead, Civil Code section 3248 specifies that "[t]he bond shall provide that if *the original contractor or a subcontractor* fails to pay . . . any of the persons named in Section 3181 . . . the sureties will pay for the same . . . ."[6] (Italics added.) Thus, only a subcontractor or materialman who was to be paid by the original subcontractor or a subcontractor of the original contractor is entitled to bring an action on a public works payment bond. In contrast, a subcontractor or materialman who was to be paid by a *materialman* of the original contractor is *not* entitled to bring such an action.

---

[5] For purposes of division 3, part 4, title 15 (§§ 3082–3267) of the Civil Code ("Works of Improvement"), " '[m]aterialman' means any person who furnishes materials or supplies to be used or consumed in any work of improvement." (Civ. Code, § 3090; see also *id.*, § 3082 ["Unless the context otherwise requires, the provisions in this chapter [(§§ 3082–3106)] govern the construction of this title."].) " 'Subcontractor' means any contractor who has no direct contractual relationship with the owner." (Civ. Code, § 3104.)

[6] There is no dispute here that Eggers qualified as a "person[] named in Section 3181." (Civ. Code, § 3248.) Thus, we need not delve into the persons who are named in that statute.

## III

*ASP Was a Subcontractor, Not a Materialman*

The Supreme Court discussed the distinction between subcontractors and materialmen in *Theisen*, a case that arose under circumstances eerily similar (but not identical) to those in this case. In *Theisen*, the County of Los Angeles contracted with Theisen to serve as the general contractor on a public works project (a fire combat training center). (*Theisen, supra*, 54 Cal.2d at pp. 172–173.) In turn, "Theisen contracted with Petterson Corporation . . . for Petterson to supply 64 custom made doors to conform to architect's specifications. Petterson then contracted with defendant Durand for Durand to supply 20 of such doors . . . ." "Theisen took delivery of the 64 doors at Petterson's plant and paid Petterson in full without asking for proof of releases by Petterson's suppliers. Theisen installed the doors. Neither Durand nor Petterson entered upon the job site." (*Id.* at pp. 173–174.)

After Petterson failed to fully pay Durand for the doors Durand fabricated, "Durand filed with the county a stop notice which designated Petterson as a 'subcontractor' of Theisen . . . ." (*Theisen, supra*, 54 Cal.2d at p. 174.) Durand recovered from the county in an action under the stop notice, and the county then demanded that Theisen and its surety reimburse the county. (*Id.* at pp. 174–175.) Theisen brought a declaratory relief action against the county "for a declaration of the rights and obligations of the parties under the bond . . . and the county brought [a] cross-action on the obligation of the bond." (*Id.* at p. 172.)

"The controlling question [in the case was] whether the trial court correctly determined that Petterson, which contracted with the general contractor to furnish 64 custom made doors, was 'a sub-contractor . . . ,' " because "if Petterson, to whom Durand furnished material, was 'a sub-contractor,' . . . then Durand properly invoked the stop notice remedy." (*Theisen, supra*, 54 Cal.2d at pp. 179, 176.) Theisen argued "that upon the undisputed facts Petterson as a matter of law was itself only a materialman, not an agent or subcontractor of general contractor Theisen," relying on a statement in *Hihn-Hammond Lumber Co. v. Elsom* (1915) 171 Cal. 570, 575 [154 P. 12] "that a subcontractor is 'one who, under an agreement with the contractor, *enters upon the premises* and there, with material furnished by himself, erects a definite part of the structure composing the building.' " (*Theisen*, at pp. 176, 179.)

The Supreme Court in *Theisen* disagreed with the statement from *Hihn-Hammond* and instead held as follows: "In our opinion the essential feature which constitutes one a subcontractor rather than a materialman is that

in the course of performance of the prime contract he constructs a definite, substantial part of the work of improvement in accord with the plans and specifications of such contract, not that he enters upon the job site and does the construction there. We are not here concerned with the mere furnishing of materials from which doors were to be constructed by the general contractor nor are we interested in the sale of standard stock-in-trade doors. Specifically we are dealing with a contract whereby the doors were to be fabricated according to the specifications of the prime contract and as a constituent part of the construction of the public improvement which was the subject of the contract. We do not accept the view of some other jurisdictions [citation] that to be a subcontractor one must install work at the site of the improvement. Rather, we conclude that one who agrees with the prime contractor to perform a substantial specified portion of the work of construction which is the subject of the general contract in accord with the plans and specifications by which the prime contractor is bound has 'charge of the construction' of that part of the work of improvement [citation] and is a subcontractor although he does not undertake to himself incorporate such portion of the projected structure into the building. . . . It therefore appears that the trial court correctly determined that Petterson, who agreed with the general contractor to furnish 64 doors, custom made in accord with architect's specifications, was a subcontractor, and that Durand, who furnished 20 of those doors to the subcontractor, was entitled to invoke the stop notice procedure." (*Theisen, supra*, 54 Cal.2d at pp. 183–184.)

In arguing that *Theisen* supports their position that ASP was a materialman, not a subcontractor, defendants rely on the first sentence of the passage set forth above, in which the Supreme Court stated that a subcontractor is one who "in the course of performance of the prime contract . . . *constructs* a definite, substantial part of the work of improvement in accord with the plans and specifications of such contract." (*Theisen, supra*, 54 Cal.2d at p. 183, italics added.) Defendants point out that unlike Petterson, which manufactured 44 of the 64 doors Theisen ordered, ASP manufactured nothing here. In defendants' view, because ASP contracted *all* of the door manufacturing out to Eggers and constructed *no* part of the project, ASP was a mere materialman, not a subcontractor.

To support its contrary argument that ASP was a subcontractor, not a materialman, Eggers, too, relies on *Theisen*, but emphasizes the *latter* portion of the passage set forth above, where the Supreme Court stated that "one who *agrees* with the prime contractor to perform a substantial specified portion of the work of construction which is the subject of the general contract in accord with the plans and specifications by which the prime contractor is bound has 'charge of the construction' of that part of the work of improvement [citation] and is a subcontractor . . . ." (*Theisen, supra*, 54 Cal.2d at p. 183, italics added.) In Eggers's view, the crucial factor under *Theisen* is what the person

who contracts with the original contractor *agrees* to do. Under this view of *Theisen*, because ASP agreed to provide custom doors for the project, ASP necessarily agreed to perform a substantial specified portion of the work of construction, and the fact that ASP performed its agreement through a contract with another entity, rather than having its own employees manufacture the doors, does not alter ASP's status as a subcontractor rather than a materialman.

For several reasons, we agree with the trial court that Eggers has the better argument on the proper interpretation of *Theisen*. Defendants' reading of *Theisen* relies on the conclusion that the most important factor in the court's decision that Petterson qualified as a subcontractor was that "Petterson manufactured 44 doors." The passage set forth above, however, which is the final and crucial part of the decision does not *mention* that Petterson manufactured some of the custom doors it agreed to provide for the project. Instead, after concluding that one who *agrees* to perform a substantial specified portion of a project in accord with the plans and specifications is a subcontractor, the court stated only that "Petterson, who agreed with the general contractor to furnish 64 doors, custom made in accord with architect's specifications, was a subcontractor . . . ." (*Theisen, supra*, 54 Cal.2d at pp. 183–184.) Thus, contrary to defendants' characterization, the critical fact for purposes of the court's analysis was what Petterson *agreed* to do—furnish 64 custom doors—not whether Petterson actually manufactured some of those doors itself rather than contracting with another entity for the manufacture of some of the doors.

This interpretation of *Theisen* is most consistent with earlier portions of the decision as well. Earlier in the decision, in discussing who had rights under the mechanic's lien and stop notice statutes in effect at that time, the court explained that all of the statutes were "coordinated by [former] section 1182 (subd. (c)) [of the Code of Civil Procedure], which provide[d] that the statutory 'agent of the owner,' that is, the one whose suppliers can have the lien and stop notice remedies where the circumstances are otherwise appropriate, includes 'every contractor, subcontractor, architect, builder or other person having charge of the construction . . . , in whole or in part, of any building or other work of improvement.' " (*Theisen, supra*, 54 Cal.2d at p. 177.) In the ultimate paragraph we have set forth above, the court hearkened back to this earlier portion of its decision when the court identified as a subcontractor one who "has 'charge of the construction' of [a substantial specified] part of the work of improvement." (*Id.* at p. 183.)

■ In our view, a person has "charge of" the construction of part of a project when that person has, by contract with the original contractor, *agreed* to provide that part of the construction, whether the person performs the

construction himself, has employees perform the construction, or subcontracts with someone else for that person to perform the construction. It is the agreement to provide part of the construction, not who actually performs that part of the construction, that gives one "charge of" that part of the construction and thus makes one a subcontractor.

■ Under this understanding of *Theisen*, ASP was a subcontractor, not a materialman, because ASP agreed to provide the custom doors that were required by the architect's plans and specification. It is of no moment, for purposes of characterizing ASP under *Theisen*, that ASP entered into a subcontract with another firm (Eggers) to perform the actual manufacturing of the doors. Under its contract with Flintco, ASP remained in "charge of" that particular portion of the project and thus was a subcontractor for purposes of the requirement in subdivision (b) Code Civil Code section 3248 that a public works payment bond "shall provide that if the original contractor *or a subcontractor* fails to pay . . . any of the persons named in Section 3181 . . . the sureties will pay for the same . . . ." (Italics added.)

Defendants complain that this interpretation of *Theisen* "would potentially give lien rights to second or third tier suppliers who might fabricate a custom product pursuant to specification requirements" and "[s]uch a rule would require general contractors to inquire into the scope of work for all tiers of suppliers under the original material supplier to determine if any components were of special manufacture." According to defendants, "Such is not the state of the law. The classification that matters is that of the first tier, those the general contractor contracts with for portions of the labor and materials for the project."

With the latter assertion, we unequivocally agree—the classification that matters *is* the first tier under the general contractor—but we disagree with the complaint that precedes that assertion. If a general contractor enters into a subcontract under which the subcontractor is given charge of a specific, substantial portion of the project—here, the construction of hundreds of custom doors—then the general contractor knows that the persons named in Civil Code section 3181 that the subcontractor is responsible for paying will be able to make a claim against the general contractor's payment bond if the subcontractor fails to pay. To protect itself, all the general contractor has to do is condition its payment to the subcontractor on proof of releases by the subcontractor's suppliers, as the court in *Theisen* intimated. (See *Theisen, supra*, 54 Cal.2d at p. 174.) No "inquir[y] into the scope of work for all tiers of suppliers under the" subcontractor is necessary.

To the extent defendants argue that *Theisen* is no longer controlling because of statutory changes made in 1969, we disagree. What the Legislature did in the 1969 legislation on which defendants rely was "revise and

restate the laws of this state relating to mechanics' liens and works of improvement." (Stats. 1969, ch. 1362, § 10, p. 2783.) In doing so, however, the Legislature specifically directed that "[t]his act shall not be construed to constitute a change in, but shall be construed as declaratory of, the preexisting law." (*Ibid.*) Given this directive, we cannot conclude that the Legislature intended the 1969 legislation to affect in any manner the conclusion of our Supreme Court in *Theisen* about what makes one a subcontractor rather than a materialman.

Finally, we reject defendants' reliance on the definition of a "contractor" in section 7026 of the Business and Professions Code. Defendants contend that under that statute, "[a] 'contractor' is one who undertakes to, or does construct, alter, repair, add to, subtract from, improve, move, wreck, or demolish a building" and therefore "[a] subcontractor supplies material *and* installs it." (Boldface omitted.)

■ This argument has no merit for at least two reasons. First, defendants offer no authority suggesting that the definition of "contractor" contained in Business and Professions Code section 7026, which is part of the Contractors' State License Law (Bus. & Prof. Code, § 7000 et seq.), has any bearing on who is a subcontractor for purposes of the statutes in the Civil Code governing works of improvement. Indeed, Business and Professions Code section 7026 suggests the contrary, given that the definition therein is expressly stated to be "for the purposes of this chapter" and "within the meaning of this chapter." (Bus. & Prof. Code, § 7026.)

■ Second, even if the definition in Business and Professions Code section 7026 had some bearing here, defendants have misrepresented that definition. The statute defines a "contractor" as "any person who undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or herself *or by or through others*, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building . . . or to do any part thereof . . . ." (Italics added.) Thus, under Business and Professions Code section 7026, a person who merely *undertakes* to construct part of a building, or who constructs part of a building *by or through others*, is a contractor. This understanding of Business and Professions Code section 7026 is entirely consistent with our interpretation of *Theisen* and obviously provides no support for defendants' assertion that a person must both supply material *and* install that material to be classified as a subcontractor for purposes of determining who is entitled to make a claim for recovery under a public works payment bond.

For all of the foregoing reasons, defendants have failed to show any error in the granting of Eggers's motion for summary judgment.

## DISPOSITION

The judgment is affirmed. Eggers shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Nicholson, Acting P. J., and Hoch, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 15, 2012, S199376.