702 P.2d 855

**LaGRAND STEEL PRODUCTS CO., an Oregon corporation, Plaintiff-Counterdefendant-Appellant,**

v.

**A.S.C. CONSTRUCTORS, INC., an Idaho Corporation, Defendant-Respondent,**

and

**Steel Management, Inc., an Oregon Corporation, Defendant-Counterclaimant-Respondent,**

and

**The Travelers Indemnity Company, a Connecticut Corporation, Defendant-Respondent.**

No. 14879.

Court of Appeals of Idaho.

May 31, 1985.

Rehearing Denied July 31, 1985.

Wayne V. Meuleman (argued), Meuleman & Miller, Boise, K. John Condon, Portland, for plaintiff-counterdefendant-appellant.

R. Michael Southcombe, Rory R. Jones (argued), Stanley W. Welsh, Clemons, Cosho & Humphrey, Boise, for defendant-respondent.

PER CURIAM.

The question presented is whether, under the facts of this case, a supplier of material to a public works project is entitled to recover against the prime contractor's payment bond. The district court said no. We reverse.

A.S.C. Constructors, Inc., was awarded the prime contract for construction of the Boise State University multi-purpose pavilion. As required by I.C. § 54–1926, A.S.C. obtained a payment bond, purchasing it from Travelers Indemnity Company. A.S.C. contracted with Steel Management, Inc., to provide fabricated steel for the project. Steel Management, in turn, contracted with the appellant, LaGrand Steel Products Co., to provide raw steel. LaGrand furnished the steel but was not paid for it.

LaGrand sued Steel Management and received a judgment of approximately $43,-

000 plus interest, but the judgment apparently proved to be uncollectible. In the same action, LaGrand also sued on the prime contractor's payment bond. The district court noted that a supplier may recover against the bond only if the materials have been furnished to a "subcontractor" as defined in I.C. § 54–1927. The court held that Steel Management was not such a subcontractor and, therefore, LaGrand could not recover. This appeal followed.

Idaho Code § 54–1925 et seq., the "Public Contracts Bond Act," is substantially similar to 40 U.S.C. § 270a et seq., commonly known as the Miller Act. Both the federal and state statutes were enacted to protect persons who furnish labor or materials to public works projects. The statutes serve a remedial purpose. Normally, in private construction projects, those who furnish labor and materials without receiving payment may file and foreclose mechanics' liens. However, because such liens cannot be asserted against public property, the payment bond is required by statute.

The scope of statutory protection is limited to two categories of potential claimants. First, those who have a direct contractual relationship with the prime contractor may recover against the payment bond. Second, those who have a direct contractual relationship with one of the prime contractor's "subcontractors" also may recover. See I.C. § 54–1927 and 40 U.S. § 270b; Clifford F. MacEvoy Co. v. United States, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944). This case focuses upon the second category.

A subcontractor has been defined, for the purpose of the Miller Act, as "one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract...." Id. at 109, 64 S.Ct. at 894. This definition has been augmented to take into account the "substantiality and importance" of the relationship with the prime contractor. F.D. Rich Co. v. United States, 417 U.S. 116, 123, 94 S.Ct. 2157, 2162, 40 L.Ed.2d 703 (1974). These broad phrases must be read in light of the over-riding purpose of limiting the protection of the payment bond to those who are in direct contractual relationships with the prime contractor or its subcontractors. In MacEvoy, the United States Supreme Court explained:

> The relatively few subcontractors who perform part of the original contract represent in a sense the prime contractor and are well known to him. It is easy for the prime contractor to secure himself against loss by requiring the subcontractors to give security by bond, or otherwise, for the payment of those who contract directly with the subcontractors. But this method of protection is generally inadequate to cope with remote and undeterminable liabilities incurred by an ordinary materialman, who may be a manufacturer, a wholesaler or a retailer. Many such materialmen are usually involved in large projects; they deal in turn with innumerable submaterialmen and laborers.

322 U.S. at 110–11, 64 S.Ct. at 895–96. (citation and footnote omitted).

In litigation concerning payment bonds, the judicial task is to apply the statutory concept of a "subcontractor" to varying fact patterns. On appeal, when faced with mixed issues of fact and law, we defer to facts found upon substantial evidence but we freely review the application of law to the facts. See generally City of Burley v. McCaslin Lumber Co., 107 Idaho 906, 693 P.2d 1108 (Ct.App.1984).

In this case the central facts—undisputed or found by the trial court upon substantial evidence—are as follows. The prime contract between the State of Idaho and A.S.C. was approximately $14,600,000. The contract between A.S.C. and Steel Management totaled approximately $1,376,548. The purchase order between A.S.C. and Steel Management was a relatively complex document, making reference to provisions in the prime contract. Steel Management was to provide custom fabrication of the steel provided by LaGrand. This fabrication involved cutting beams to required length, drilling holes, welding

plates, and prime painting. The work was not unduly complicated. It was performed exclusively at Steel Management's facility. Steel Management did not erect or supervise. the erection of the fabricated steel on the job site.

Labor involved in the fabrication totalled approximately 10,000 man hours billed at a cost of $100,000. A.S.C. required Steel Management to submit shop drawings outlining the fabrication of the steel. Steel Management subcontracted this work to an engineering firm. Steel Management received progress payments as the fabrication work progressed, less five percent retainage held until all materials were incorporated into the work and accepted by the State. A.S.C. required and obtained personal guarantees of contract performance from the principals and owners of Steel Management.

■ These factors present a mixed picture—some auguring in support of subcontractor status and some against it. But in light of the subcontractor definition and its underlying purpose, we deem it particularly significant that the contract between A.S.C. and Steel Management embraced more than one million dollars and constituted approximately ten percent of the total prime contract in a major public works project. A contract of such economic dimension connotes a substantial, important relationship with the prime contractor. It is also noteworthy that the prime contractor deemed Steel Management's role in the project sufficiently important to secure personal performance guarantees. Considering these factors in conjunction with the others, we conclude Steel Management had a substantial and important relationship with the prime contractor. Accordingly, we hold that Steel Management was a sub-

contractor within the meaning of I.C. § 54–1927 *et seq.* LaGrand is entitled to recover on the bond.

■ LaGrand has requested awards of attorney fees below and on appeal. Attorney fees are allowed "[i]n any action brought upon ... the bonds provided herein...." I.C. § 54–1929. Accordingly, an award of attorney fees for the trial of this action is appropriate. But the statute is silent concerning awards of fees on appeal. We note that the mechanics' lien statute, I.C. § 45–513, is similarly silent and has been held not to authorize fee awards on appeal. *E.g., Acoustic Specialties, Inc. v. Wright,* 103 Idaho 595, 651 P.2d 529 (1982). Accordingly, we decline to make such an award here, under I.C. § 54–1929. Of course, attorney fees may be awarded under I.C. § 12–121 if an appeal is pursued or defended frivolously, unreasonably or without foundation. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979). But in this case we believe a substantial question was presented. The appeal was not defended frivolously, unreasonably or without foundation. Consequently, no attorney fees are awarded on appeal.

The judgment of the district court is reversed. The case is remanded for determination of an appropriate trial-level attorney fee award. Costs to appellant.