**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Joe R. SALAZAR, Defendant-Appellant.**

**No. 83CA1066.**

Colorado Court of Appeals, Div. II.

Sept. 12, 1985.

Rehearing Denied Oct. 17, 1985.

Certiorari Granted (Salazar) March 10, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Dolores S. Atencio, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Cecil L. Turner, Ted J. Malouff, Pueblo, for defendant-appellant.

KELLY, Judge.

Defendant appeals from a judgment of conviction on four counts of theft by receiving while engaged in the business of buying, selling, or otherwise disposing of stolen goods for profit, one count of possession with intent to distribute marijuana, one count of conspiracy to commit either of the aforementioned offenses, and one count of possession of a defaced firearm. We affirm.

## I.

Defendant contends that virtually all of the evidence seized during a search of his house, including rifles, pistols, and packages of marijuana, should have been suppressed. He argues that the affidavit in support of the warrant did not establish probable cause, failed to state the place to be searched, was based on stale information, and that the police conducted an "exploratory" search.

The warrant for the search of defendant's home arose from information provided to the police by defendant's alleged co-conspirator, Sammy Silva, a person named Farris Bervig, and two others. In pertinent part, the warrant states that on January 19, 1983, Bervig told police that a Remington 870 shotgun, a Marlin .22 caliber rifle, a Remington BDL 30–06 rifle, and a Tasco 4-power scope had been stolen from an Alamosa hardware store.

On the same date, Silva told police that the guns and scope were stolen by a Kenneth Vigil, and that during the "first week in January" Silva and two others took the goods to defendant's residence, a "two-story house with a porch." The weapons were taken to defendant because a "Jimbo" DeLuna told Silva that defendant would trade illegal drugs for guns. Silva indicated that he traded the stolen items to defendant for marijuana and hashish.

The warrant further stated that on January 18 and 19, two persons, identified in the warrant, told the police that they overheard Silva discussing taking the guns to Walsenburg. One of the persons heard Silva say he traded for "grass," and this person had previously given reliable information resulting in the seizure of stolen property.

Additionally, the warrant stated that defendant owned three residential properties on West First Street in Walsenburg. Attached to the warrant were documents from the Huerfano County Clerk's office showing that the properties are on adjacent lots, and that the addresses are 203, 205, and 215 West First Street. There are pictures of the 205 and 215 structures. Both could be described as having two stories with a porch, but 205 most clearly meets this description. The property description of 203 indicates that the house is "in poor shape non-livable."

Finally, the warrant states that the Chief of the Walsenburg police verified Silva's "instructions" concerning the location of defendant's residence. Another officer "familiar" with defendant's "premises" stated there were five buildings "which can be used for storage and should be searched."

## A.

Defendant argues that the affidavit failed to establish probable cause to believe that the guns and scope were stolen. Defendant notes that, although the affidavit does name Bervig, it does not explain his connection with the case or state the basis of his knowledge. With respect to Silva, defendant argues there is no basis for his

knowledge that Vigil stole the weapons, and no demonstration that Silva is reliable.

In resolving this issue, we apply the long-standing rule that probable cause must be shown within the "four corners" of the affidavit. *People v. Bauer*, 191 Colo. 331, 552 P.2d 512 (1976). The affidavit is to be "read in a common sense and realistic fashion." *People v. Hearty*, 644 P.2d 302 (Colo.1982).

■ Applying these rules we conclude that there was probable cause to believe that the guns and scope were stolen. With respect to Bervig, a common sense reading of the affidavit is that Bervig was a "citizen informant" familiar with the items missing from the hardware store. *People v. Williams*, 42 Colo.App. 58, 595 P.2d 692 (1979). Therefore, his information was reliable and credible.

With respect to Silva, we apply the "totality of the circumstances" test announced in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *See People v. Sullivan*, 680 P.2d 851 (Colo.App.1984); *People v. Gallegos*, 680 P.2d 1294 (Colo. App.1983). Here, Bervig's statement corroborating Silva's information, and police confirmation of Silva's directions to defendant's house indicate the existence of a basis for Silva's "statements." *People v. Sullivan, supra.* Furthermore, Silva's admission of criminal involvement, both to the police and others, is indicative of his reliability. *People v. Stoppel*, 637 P.2d 384 (Colo.1981).

## B.

Defendant next contends that the affidavit is defective because it failed to establish what property was to be searched. *See People v. Arnold*, 181 Colo. 432, 509 P.2d 1248 (1973). Defendant argues that Silva's failure to provide the police with defendant's address, and the failure to recite the instructions which were confirmed by the police, vitiates the warrant.

Applying the test of "reasonableness," we conclude the affidavit demonstrates reasonable grounds to believe the stolen goods

would be found on defendant's property. *People v. Hearty, supra.* The police independently established that Silva knew how to reach defendant's property, and provided documentation showing that the property in fact belonged to defendant.

C.

■ Defendant next argues that the information contained in the affidavit was stale. He notes that Silva claimed to be at defendant's house the "first week in January" and the warrant was not obtained and executed until January 20.

The first information connecting the defendant to the crime was obtained on January 19, 1983, when Silva gave his statement to the police. Inasmuch as only one day had elapsed between the acquisition of probable cause and execution of the warrant, and less than three weeks between the alleged crime and the execution, the information was not stale. *People v. Tafoya,* 703 P.2d 663 (Colo.App.1985); *People v. Thrower,* 670 P.2d 1251 (Colo.App.1983).

D.

■ Defendant next contends that the warrant authorized an "exploratory" search because there was probable cause to search only the house where the transaction occurred, not three houses. *See People v. Arnold, supra.* We reject this argument because the affidavit established that all three residences were under defendant's control, and were situated on contiguous pieces of property. The law of probable cause does not require a "mathematical probability" that evidence will be located in a particular location, only a "reasonable" probability. *People v. Hearty, supra.* Under the circumstances, the test was met.

E.

Defendant also argues that even if the warrant was valid, the officers executed it in an illegal manner. Specifically, he contends that the police seized property which was not named in the warrant nor reasonably connected to any known offense.

The evidence indicates that of the three weapons and one scope listed in the warrant, only a scope matching the warrant description was found. However, in the course of the search the officers seized some 13 guns, a battery charger, some stereo equipment, a crossbow, a cutting torch, a large quantity of suspected drugs, and drug paraphernalia.

It is conceded that during the search the officers had no knowledge connecting much of the property with any offense. However, officers did identify one rifle and the battery charger as being stolen. Further, six of the rifles were found lying on a bed under a blanket.

The record also indicates that as the items were seized they were "stockpiled" in the dining room. After being advised of his *Miranda* rights defendant was asked if any of the items belonged to him personally, and he replied, "It looked like you did pretty good to me."

■ In order to seize evidence discovered in "plain view," but not described in the warrant, there must be a "nexus" between the evidence and criminal behavior. *People v. Franklin,* 640 P.2d 226 (Colo.1982). Factors relevant to this determination are whether the items seized are similar to items described in the warrant, whether the quantity and placement of the property renders it unlikely that the property is on the premises for ordinary use, and whether persons on the scene can offer information concerning the property. *People v. Franklin, supra.*

■ We agree with the trial court that application of these standards demonstrates a "nexus" between the property and criminal behavior. The weapons seized were similar to items described in the warrant, some of the items were known to be stolen, and the amount and location of the items were suspicious. These factors, in conjunction with defendant's statements, were sufficient to justify the police conduct in this case.

F.

Because we hold that the search and seizure was lawful, we need not address the argument that defendant's incrimina-

ting statements were the product of an unlawful search.

## II.

■ Defendant next contends that the trial court erroneously instructed the jury in accordance with § 18–4–411, C.R.S. (1984 Cum.Supp.). He argues that because no single count of the information charges possession of "three or more separate things of value," the statute was inapplicable. We disagree.

Section 18–4–411 provides that:

"If any person commits theft by receiving as defined in section 18–4–410(1), when such offense involves three or more separate things of value each of which is the property of a separate owner, such commission of theft by receiving constitutes prima facie evidence that the person is engaged in the business of buying, selling, or otherwise disposing of stolen goods for profit."

Here, the evidence supported the inference that on January 20, 1983, defendant possessed three or more separate items belonging to separate owners. Furthermore, the evidence supported the conclusion that defendant's retention of those items constituted the crime of theft by receiving. Hence, the "receiving" component of the offense was established. Section 18–4–410(1), C.R.S. (1984 Cum.Supp.); *People v. Williams*, 651 P.2d 899 (Colo. 1982).

The apparent purpose of § 18–4–411 is to assist the prosecution in proving the "fencing" element of § 18–4–410(6), C.R.S. (1984 Cum.Supp.). *People v. Williams, supra.* That purpose would be defeated by turning the statute's application on the form of the information. Rather, the criminal transaction must be viewed in its entirety, and the applicability of the statute determined with reference thereto. Here, while the prosecutor chose to charge some of the items in separate counts, a single count was permissible; hence, there was no error. *See People v. District Court*, 192 Colo. 355, 559 P.2d 1106 (1977).

Defendant further contends that § 18–4–411 is unconstitutional. Citing *Brown v.*

*District Court*, 197 Colo. 219, 591 P.2d 99 (1979), he argues that the statute creates an impermissible presumption. We decline to consider this issue because it is beyond our jurisdiction.

Section 13–4–102(1)(b), C.R.S., provides that this court has initial jurisdiction to consider appeals from final judgments of district courts, excepting "cases in which the constitutionality of a statute ... is in question." In light of this provision and defendant's constitutional argument, we requested our supreme court to determine the question of jurisdiction in accordance with § 13–4–110(1)(a), C.R.S. The supreme court issued an order stating that "jurisdiction shall be retained by the Court of Appeals."

■ Section 13–4–110(1)(a), C.R.S., provides that, in cases where jurisdiction is in question, the "supreme court shall decide the question of jurisdiction in a summary manner, and its determination shall be conclusive." We hold that this section, when read in conjunction with § 13–4–102(1)(b), means that the supreme court may rule that this court has jurisdiction of an appeal in which a party raises the constitutionality of a statute, but that in such an appeal this court's authority is restricted to addressing the non-constitutional issues. In light of the specific jurisdictional provisions of § 13–4–102, C.R.S., we do not think the general assembly intended to confer upon the supreme court the power to expand and contract the jurisdictional authority of this court.

The foregoing ruling is in accordance with *McCamant v. City & County of Denver*, 31 Colo.App. 287, 501 P.2d 142 (1972) wherein we held that this court lacked jurisdiction to determine the constitutionality of a city charter provision, but did rule on the other issues presented in that appeal. *But see People v. Fields*, 697 P.2d 749 (Colo.App.1984) (*cert. granted*, March 11, 1985, on other issues); *People v. Wieder*, 693 P.2d 1006 (Colo.App.1984) (*cert. granted*, January 14, 1985, on other issues); *Fisher v. Jorgensen*, 674 P.2d 1003 (Colo. App.1983).

### III.

Defendant argues that violation of the sequestration order by a police officer should have precluded the testimony of the co-conspirator Silva. We disagree.

 Silva testified under a grant of immunity. He stated that, during the trial, Officer Orton had threatened to reinstate several felony charges, which had been dropped pursuant to a plea bargain, unless Silva testified against the defendant.

The trial court concluded the defendant was not prejudiced by the violation of the sequestration order. In its view, the grant of immunity shielded Silva from Orton's threat.

The remedy for violation of a sequestration order is within the sound discretion of the trial court. *People v. Gomez,* 632 P.2d 586 (Colo.1981). Here, the grant of immunity diminished the effect of Orton's threat. Furthermore, the matter was placed before the jury and they were free to determine what impact the threat had upon Silva. Under these circumstances, there was no error in permitting Silva to testify.

### IV.

Defendant next contends that the trial court erred in failing to grant a mistrial because of two alleged instances of "prosecutorial misconduct."

### A.

 During its case-in-chief, the prosecution introduced into evidence a 4-power Tasco scope seized from defendant's home. At the close of the case, the prosecution moved to dismiss the count of theft by receiving involving the scope and consented to having the scope removed from evidence. The basis of this action was the prosecutor's discovery that the owner of the hardware store could not positively identify the scope as one stolen from his store.

The defense contends that a mistrial should have been granted because withdrawal of the scope was a prosecution "tactic" designed to bolster impermissibly Silva's credibility. We disagree.

In our view, the trial court exercised an abundance of caution in ordering that the scope be removed from evidence. Even though the prosecution elected to drop the theft count involving the scope, the scope was circumstantially relevant to prove the conspiracy charge. *See People v. Larson,* 194 Colo. 338, 572 P.2d 815 (1977). Silva testified that, as part of the transaction with defendant, he traded two scopes "all brand new in the cases." When the police seized the scope from defendant's home, it was still encased in the "original cellophane." Under these circumstances, the trial court did not abuse its discretion in denying defendant's motion for a mistrial when the scope was removed from evidence. *See Hamrick v. People,* 624 P.2d 1320 (Colo.1981).

### B.

 Defendant also contends that the prosecution impermissibly suggested to the jury that the defense was "hiding" information. The charge stems from a comment made by the prosecutor during his examination of a police officer concerning the search of defendant's home. The colloquy was as follows:

"Q Now, Defendant's defense counsel has asked whether anyone talked to this Defendant's daughter; did you talk to his daughter?

A Yes, I did.

DEFENSE COUNSEL: Objection, Your Honor.

THE WITNESS: I'm sorry.

DEFENSE COUNSEL: This is hearsay evidence. It's not a statement made against interest by any party. Certainly, the District Attorney's Office had the right to endorse and subpoena Mr. Salazar's daughter, and that was not done. And, therefore, he cannot testify as to any statement she made.

PROSECUTOR: I withdraw the question. *Officer, I guess he does not want us to say what the daughter* —[emphasis added]

DEFENSE COUNSEL: Objection, Your Honor, he's making statements that are totally uncalled for.

THE COURT: The jury will disregard the District Attorney's last comment. The objection is sustained by the Court and the District Attorney will withdraw the question."

The court did not abuse its discretion in denying defendant's subsequent motion for a mistrial and relying on the curative instruction. *See People v. Marioneaux,* 44 Colo.App. 213, 618 P.2d 678 (1980). While the prosecutor's comment was improper, it was apparently intended as a caution to the witness rather than an attack on the defense. *See Hamrick v. People, supra.* Furthermore, the impact of the statement was not "pervasive" in light of the other evidence in the case. *People v. Marioneaux, supra.*

As to those issues for which this court has jurisdiction, the judgment is affirmed.

BABCOCK and METZGER, JJ., concur.