LYLE SIGNS, INC.

v.

EVROKS CORPORATION AND TRAVELERS INDEMNITY COMPANY

August 16, 1989

*Normandin, Cheney & O'Neil,* of Laconia (*James F. Lafrance* on the brief and orally), for the plaintiff.

*Ruth P. Gulick,* of New Hampton, by brief and orally, for the defendant Evroks Corporation.

THAYER, J.   This is an appeal by the plaintiff, Lyle Signs, Inc., from an order of the Superior Court (*Morrill,* J.) granting Evroks' motion for summary judgment. The plaintiff's claim against the defendant, Evroks Corporation (Evroks), and against Travelers Indemnity Company (Travelers) as surety, arises from a construction bond issued in connection with a State of New Hampshire highway project. The plaintiff seeks to recover under the construction bond for nonpayment of amounts owed it by Standard Sign & Signal Co., Inc. The superior court granted the defendant's motion for summary judgment, finding that the plaintiff was not

protected by the construction bond requirement of RSA 447:16. For the reasons that follow, we vacate and remand.

The facts of this case are as follows. The defendant, Evroks, contracted with the State of New Hampshire for the completion of a highway project in Littleton. Accordingly, Evroks obtained a construction bond, as required by RSA 447:16, issued by Travelers. Evroks contracted with Standard Sign & Signal Co., Inc. (Standard Sign) for the supply of roadway signs. Standard Sign subsequently ordered letters, numbers and other material from the plaintiff, Lyle Signs.

Standard Sign was paid $30,779.35 by Evroks for the signs supplied. Standard Sign, however, never paid the plaintiff the $5,901.36 due for the materials supplied. The plaintiff then sought to recover the amount owed from the defendant, Evroks, and its surety, Travelers.

The plaintiff filed a notice of its claim with the New Hampshire Department of Transportation on September 19, 1986, in accordance with RSA 447:17. When the plaintiff did not receive payment, it filed a petition in the superior court to enforce its claim against the principal and the surety pursuant to RSA 447:18. The defendant, Evroks, answered the petition by alleging that because the plaintiff was merely a materialman's materialman, it was not protected by RSA chapter 447.

Both parties filed motions for summary judgment. The superior court granted Evroks' motion for summary judgment, finding that the plaintiff was not a materialman to a subcontractor and therefore was not protected by RSA 447:16. The plaintiff appeals that decision.

Before this court the plaintiff raises the issue of whether it is protected by the construction bond required by RSA 447:16, where it furnished materials to the material supplier of a general contractor for a State highway project. The plaintiff argues that it is protected under the statute because the purpose of RSA 447:16 is to protect persons who furnish labor or materials for public works projects. Furthermore, the plaintiff argues that it is in the same position as the plaintiff in *Naylor Pipe Company v. Murray Walter, Inc.*, 120 N.H. 696, 421 A.2d 1012 (1980), where this court allowed recovery under the bond provision.

We resolve this dispute by first looking to the statute. RSA 447:16 provides in pertinent part that:

"[o]fficers, public boards, agents or other persons who contract in behalf of the state ... shall ... obtain as a condition precedent to the execution of the contract, sufficient security, by bond or otherwise, in an amount equal to at least 100 percent of the contract price ... conditioned upon the payment by the contractors and subcontractors for all labor performed ... [and] material used ... by said principal and used in carrying out said contract ...."

We have previously construed this provision as protecting the materialman of a subcontractor. *Naylor Pipe*, 120 N.H. at 697, 421 A.2d at 1013; *General Electric Co. v. Dole Company*, 105 N.H. 477, 480, 202 A.2d 486, 488 (1964). In *Naylor Pipe*, we held that the plaintiff, *Naylor Pipe Co.*, was protected by RSA 447:16 because it was a materialman of Pilgrim Industries, Inc., a subcontractor, on a State wastewater treatment plant. *Naylor Pipe*, 120 N.H. at 697–98, 421 A.2d at 1013. We note that in *Naylor Pipe* no question was raised concerning Pilgrim Industries' status as a subcontractor. *See Naylor Pipe supra.*

The defendant alleges, however, that the facts of this case are distinguishable from *Naylor Pipe* because Standard Sign was a materialman, not a subcontractor, and that Lyle Signs is therefore outside the scope of RSA 447:16 because it was a material supplier to a materialman. In contrast, the plaintiff alleges that any distinction made between materialmen and subcontractors is irrelevant, since the purpose of the statute is to protect those persons who furnish labor or materials for public works projects. *See Naylor Pipe*, 120 N.H. at 698, 421 A.2d at 1013; *General Electric Co. v. Dole*, 105 N.H. at 479, 202 A.2d at 488.

■ We agree with the defendant's position that RSA 447:16 does not protect a materialman's materialman. The clear statutory language provides protection for "the payment by the *contractors* and *subcontractors* for all labor performed or furnished, ... [and] for all materials used ...." RSA 447:16 (emphasis added). Clearly, this anticipates protecting only those parties who are in privity of contract with either a contractor or a subcontractor.

In addition, the original purpose of the statutory bond requirement was "to put those who supply materials for the erection of [S]tate property on a parity, in respect to their liens, with those who perform a like service for private owners." *American Bridge Co. v. Company*, 87 N.H. 62, 63, 174 A. 57, 58 (1934). We agree, therefore, with the defendant's assertion that it is appropriate to

seek guidance from the scope of the protection afforded by RSA 447:5, which is the relevant provision for liens by materialmen and subcontractors on private projects. RSA 447:5 protects those performing labor or furnishing materials "by virtue of a contract with an agent, contractor or subcontractor of the owner ...." Accordingly, because RSA 447:5 only protects those who contract with an *agent, contractor or subcontractor* of the owner, *see Westinghouse Elec. Supply Co. v. Electromech, Inc.*, 119 N.H. 833, 836, 409 A.2d 1141, 1143 (1979), and because the statutory bond requirement was originally intended to provide those who supply labor and/or material for public contracts with the same protection as is provided to those who supply private contracts, a material supplier who contracts with a materialman is outside the scope of protection provided by RSA 447:16.

Other jurisdictions have also interpreted similar statutory bond requirement provisions as not protecting a materialman's materialman. *See MacEvoy Co. v. United States*, 322 U.S. 102, 107–08 (1944) (construing the Miller Act, 40 U.S.C. §§ 270a–d); *Lovell Clay Products Co. v. Statewide Supply Co.*, 41 Colo. App. 166, 168, 580 P.2d 1278, 1280 (Colo. Ct. App. 1978); *Thurman v. Star Electric Supply, Inc.*, 307 So. 2d 283, 286 (La. 1975); *James D. Shea Co., Inc. v. Perini Corporation*, 2 Mass. App. 912, 913, 321 N.E.2d 831, 832 (Mass. App. Ct. 1975); *Weyerhaeuser Co. v. Twin City Millwork Co.*, 291 Minn. 293, 297, 191 N.W.2d 401, 403 (1971); *see also* 72 C.J.S. Supp. *Public Contracts* § 48 (1975). In addition to looking to the clear language of the statute, some courts have reasoned that the prospect of unlimited liability requires that recovery be denied to a materialman's materialman, in the absence of express statutory language. *See MacEvoy*, 322 U.S. at 110–11. We agree with this position. To construe the statute as protecting a materialman's materialman could impose endless liability on a general contractor, thereby making it liable where it would be virtually impossible for the general contractor to protect itself since relations with such entities might be quite remote or unknown. *See MacEvoy*, 322 U.S. at 110. In contrast, the problem of unlimited or unknown liability does not exist where the materialman contracts with a subcontractor. In that situation, the general contractor may protect itself against loss by requiring the subcontractors, which usually are few in number and well known to it, to post a security bond or it may require evidence that payment has been made for the materials used prior to paying the subcontractor. *Naylor Pipe*, 120 N.H. at 698, 421 A.2d at 1013 (citing *American Bridge*, 87 N.H. at 64, 174 A. at 58); *see MacEvoy*, 322 U.S. at 110. Accordingly, we decline

to construe the statute as protecting a materialman's materialman in the absence of clear statutory language.

The next question is whether Standard Sign is a subcontractor or a materialman. If Standard Sign is a subcontractor, the plaintiff is entitled to protection under RSA 447:16. If, however, Standard Sign is a materialman, the plaintiff is not protected by the statute. The defendant argues that Standard Sign is a materialman because it provided only the facing of the signs, and performed no labor at the worksite, and because it described itself as a material supplier, thereby specifically rejecting the status of a subcontractor, in a correspondence to Evroks. Furthermore, it appears from the superior court's order that the court relied on this representation in ruling on the defendant's motion for summary judgment. We note, however, that how a party describes itself is not necessarily controlling, particularly where the terms subcontractor and materialman are often subject to differing interpretations. *See United States, Etc. v. Morrison-Knudsen Co., Inc.*, 687 F.2d 129, 134 (6th Cir. 1982). Therefore, it must be determined from the facts of this case whether Standard Sign is a materialman or a subcontractor.

Although this court has found it unnecessary, until now, to define the distinctions between a materialman and a subcontractor, other jurisdictions have articulated standards or factors to be considered in determining an entity's status. The Supreme Court of California has noted that "the essential feature which constitutes one a subcontractor rather than a materialman is that in the course of performance of the prime contract he constructs a definite, substantial part of the work of improvement in accord with plans and specifications of such contract, not that he enters upon the job site and does the construction there." *Theisen v. County of Los Angeles*, 54 Cal. 2d 170, 183, 352 P.2d 529, 537, 5 Cal. Rptr. 161, 169 (1960). In *Theisen*, the court found that when the contract called for doors to be fabricated according to the prime contractor's specifications and they were a constituent part of the construction of the public improvement, the company was a subcontractor. *Id.* at 183–84, 352 P.2d at 537–38, 5 Cal. Rptr. at 169–70. We find the analysis of this court to be persuasive.

Accordingly, when determining whether an entity is a subcontractor, courts should look, in part, to the following factors: (1) Whether the entity constructs a definite and substantial part of the work of improvement called for in the original contract; (2) whether the work is performed in accordance with plans and specifications of the original contract; and (3) whether the plans and

specifications call for a unique product and not a product readily available on the open market. Lastly, we note that the work need not be done at the job site for one to be considered a subcontractor. The above list, however, is not intended to bè a comprehensive list of the factors which may be considered by courts. Furthermore, in applying these factors to their determinations, courts should consider the totality of the circumstances surrounding the contractual relationship of the parties.

Lastly, the plaintiff argues before this court that it is a subcontractor protected by RSA 447:16, because it completed a fractional portion of Evroks' contract with the State. We find this argument to be unpersuasive, however, since, as we noted earlier, RSA 447:16 only protects those who are in privity of contract with either a contractor or a subcontractor and, unless the plaintiff can demonstrate that it had a contractual relationship with either the general contractor or a subcontractor, it falls outside the scope of RSA 447:16.

Based upon a review of the record before us, we are unable to find sufficient facts to determine whether Standard Sign is a materialman or, rather, a subcontractor. Although the superior court found Standard Sign to be a materialman, the court appears to have based this determination solely on the representation of Standard Sign without an inquiry into the nature and circumstances of its contractual relationship with Evroks. The trial court, however, cannot be faulted for not making this inquiry since we have not, until now, provided guidance in this area. For the above reasons, we vacate the trial court's order and remand this case to the superior court for further proceedings consistent with this opinion.

*Vacated and remanded.*

All concurred.