WESTERN METAL LATH, A DIVISION OF TRITON GROUP, LTD., a Delaware corporation, Petitioner,

v.

ACOUSTICAL AND CONSTRUCTION SUPPLY, INC., a Colorado corporation, and American Builders and Contractors Supply Co., a Texas corporation, Respondents.

No. 91SC482.

Supreme Court of Colorado,
En Banc.

April 19, 1993.

Rehearing Denied May 24, 1993.

Pferdesteller, Vondy & Horton, P.C., Fred W. Vondy, Denver, for petitioner.

Nathan L. Andersohn, Westminster, Michael L. Blake, Denver, for respondents.

Chief Justice ROVIRA delivered the Opinion of the Court.

We suspended the Colorado Appellate Rules and ordered the parties to submit briefs on whether sections 38–26–105 to –107, 16A C.R.S. (1982 & 1992 Supp.), violate equal protection of the laws. Because the classification drawn by the statutes is ra-

tionally related to a legitimate governmental interest, we conclude that they do not.

## I

The contract for the public works project at Senior High School No. 3, located in Academy School District Number 20 (the school district), El Paso County, was awarded to Phelps Construction, Inc. (Phelps). On July 10, 1986, Phelps and Acoustical and Construction Supply, Inc. (Acoustical) entered into an agreement for the purchase of materials, including metal tracks and studs.[1] This agreement required Acoustical to give Phelps a general lien release certifying that its suppliers had been paid. Acoustical subsequently contracted with Western Metal Lath (Western) for the materials it was to supply to Phelps. The merchandise was delivered to the school site, and thereafter incorporated into the structure. Acoustical was billed $21,946.85 for these materials and it in turn billed Phelps for the goods supplied.

On November 1, 1986, American Builders and Contractors Supply Co. (American) purchased Acoustical's assets by Bulk Transfer of Assets. *See* § 4–6–101, 2· C.R.S. (1973 & Supp.1990) (repealed ch. 45, sec. 1, 1991 Colo.Sess.Laws 269). Among the assets purchased by American was the account receivable due Acoustical from Phelps. However, American did not assume any of Acoustical's liabilities.

Prior to the sale, a Bulk Sales Notice, dated October 14, 1986, was issued when the agreement in principle between American and Acoustical was reached. In response to this notice, Western's attorney sent a telegram to American which stated that Acoustical owed Western $38,629.48, of which $21,946.85 was subject to the Colorado Public Works Act (CPWA), §§ 38–26–101 to –107, 16A C.R.S. (1982 & 1992 Supp.).

Thereafter, Western filed a complaint in district court against Acoustical, American, Phelps, the school district, and Aetna Casualty and Surety (the surety on Phelps' performance and payment bonds) seeking com-

---

1. The materials were to be incorporated into the project during the dry-walling process.

pensation for the goods sold and delivered by Western to Acoustical. As relevant to this appeal, Western alleged it was owed $21,946.85, asserting that that amount was properly payable to it, rather than American as assignee of Acoustical, under the CPWA. In its answer, American cross-claimed for the disputed funds.

The school district, Aetna Casualty and Surety Co., and Phelps admitted owing the funds, deposited $21,946.85 with the registry of the court in an interpleader action, and were dismissed from the case.

The trial court granted American's motion for partial summary judgment, finding that Western was a supplier to a material-man and therefore, had no right to a claim under the CPWA. It also found American was entitled to a judgment against the school district, Phelps, and the surety because American was a materialman to a subcontractor; thus, it had a valid claim for the fund pursuant to section 38–26–107, 16A C.R.S. (1982 & 1992 Supp.).

Western initially appealed the trial court's ruling to this court alleging that "the case would involve constitutional issues relating to section 38–26–101 *et seq.* ..." We transferred the case to the court of appeals, finding "that the issues involved are within the jurisdiction of the Court of Appeals...." In the court of appeals, Western again asserted that sections 38–26–105 to –107 were unconstitutional. The court of appeals, in its unpublished opinion, declined to rule on that issue stating:

> Alternatively, Western argues that, if the interpretation of the statute by *Lovell* is correct, the statutes violate constitutional requirements of equal protection under the Fourteenth Amendment and Colo. Const. art. II, section 25. However, we have no jurisdiction to address this issue. *See* § 13–4–102(1)(b), C.R.S. (1987 Repl. Vol. 6A); *People v. Salazar,* 715 P.2d 1265 (Colo.App.1985).

*Western Metal Lath v. Acoustical & Const. Supply, Inc.,* No. 90CA0323, slip.

op. at 2 (Colo.App. May 30, 1991). To the extent that the court of appeals had jurisdiction over the issues presented, it affirmed the ruling of the trial court. We granted certiorari. On June 18, 1992, we dismissed certiorari as being improvidently granted. Additionally, we ordered that the Colorado Appellate Rules be suspended pursuant to C.A.R. 2 and that the parties submit briefs on the following issue:

> Whether sections 38–26–105 to –107, 16A C.R.S. (1982 & 1991 Supp.), violate equal protection of the laws under the United States and Colorado Constitutions.

## II

### A

■ The CPWA creates a remedy designed to protect suppliers of labor and material for public works projects because the benefits of the Colorado Mechanics Lien Act do not apply to projects constructed by governmental agencies. *South–Way Const. Co. v. Adams City Serv.,* 169 Colo. 513, 516–17, 458 P.2d 250, 251 (1969); *Flaugh v. Empire Clay Prods.,* 157 Colo. 409, 411, 402 P.2d 932, 933 (1965). The CPWA creates separate and independent remedies for claimants including rights against the contractor's[2] payment bond, *see* § 38–26–105, 16A C.R.S. (1992 Supp.), rights against the contractor's performance bond, *see id.* § 38–26–106, and a right to establish a lien against retained contract funds, *see id.* § 38–26–107. *See South–Way,* 169 Colo. at 518, 458 P.2d at 252 (construing statutory predecessor, §§ 86–7–6 to –7, C.R.S. (1963)). In its complaint, Western asserted a right to the disputed fund under all three provisions. However, here Western emphasizes its right to the disputed funds under section –107 because the funds deposited with the court for the interpleader action, and ultimately awarded to American, were the specific monies held by the school district under the notice of *lis pendens* pursuant to section –107. Accord-

---

**2.** Section 38–26–101, 16A C.R.S. (1982), defines contractor as any person to whom a public works construction contract is awarded.

ingly, we will focus our analysis on section –107.

In determining that Western was not entitled to the benefit of the remedial provisions of the CPWA, the court of appeals relied on *Lovell Clay Products Co. v. Statewide Supply Co.*, 41 Colo.App. 166, 580 P.2d 1278 (1978). In *Lovell*, the court of appeals held that a supplier to a materialman is not entitled to the protection of sections –105 through –107 stating:

> The statutory definition's inclusion of the phrase "for ... construction, erection, repair, maintenance, or improvement" ... signifies, in our view, the General Assembly's intent to limit the statutes' coverage to one actively involved in the project's execution, as opposed to one only passively supplying materials, *i.e.*, a materialman. We therefore hold that a supplier to a materialman is not entitled to the protection conferred by §§ 38–26–105 and 107, C.R.S. 1973.

*Id.* at 168, 580 P.2d at 1280. Western argues that *Lovell* incorrectly emphasized the status of the claimant—whether the claimant was in privity with the contractor or subcontractor—rather than the activity of the claimant—furnishing labor or materials. We disagree.

Section 38–26–107(1) provides:

> Any person, ... company, or corporation that has furnished labor, materials, ... or other supplies used or consumed by [the] contractor or his subcontractor in or about the performance of the work contracted to be done ... *whose claim therefore has not been paid by the contractor or the subcontractor* ... may file ... a verified statement of the

amount due and unpaid on account of such claim.

§ 38–26–107(1), 16A C.R.S. (1992 Supp.) (emphasis added).

Examination of the statute indicates that its protection is intended for those in privity of contract with either the contractor or the subcontractor. The statute grants a remedy only to persons who are to be "paid by the contractor or the subcontractor," and only those in privity with the contractor and subcontractor fall within that class of persons. Therefore, by the express terms of the statute a supplier to a materialman is not granted protection. Sections 38–26–105 (contractor's payment bond conditioned that the contractor shall promptly make payments to "all persons supplying or furnishing him or his subcontractors with ... materials"; "materialmen ... have a right of action for amounts lawfully due them from the contractor or subcontractor") and 38–26–106 (contractor's performance bond "shall provide that, if the contractor or his subcontractor fails to duly pay for any ... materials ... the surety will pay the same") are to the same effect. This limitation has a definite purpose—it protects the prime contractor from the risk of potentially unlimited liability under the payment bond to remote submaterialmen. Despite differing public bond acts, other jurisdictions have recognized that this is the purpose served by denying submaterialmen the right to recovery. *See, e.g., MacEvoy v. United States*, 322 U.S. 102, 111, 64 S.Ct. 890, 959, 88 L.Ed. 1163 (1943); *Lyle Signs, Inc. v. Evroks Corp.*, 132 N.H. 156, 562 A.2d 785, 787 (1989). *See generally* George Ashe, *Law of Public Improvement Contractors' Bonds* 19 (1966).[3]

---

**3.** Virtually all jurisdictions, under their differing public bond acts, hold that a supplier to a materialman is not entitled to protection. *See MacEvoy*, 322 U.S. at 107–08, 64 S.Ct. at 894; *Theisen v. County of Los Angeles*, 54 Cal.2d 170, 5 Cal.Rptr. 161, 166, 352 P.2d 529, 534 (1960); *LaGrand Steel Prods. v. A.S.C. Constructors*, 108 Idaho 817, 702 P.2d 855, 856 (App.1985); *Thurman v. Star Elec. Supply*, 307 So.2d 283, 286 (La.1975); *Atlantic Sea–Con, Ltd. v. Robert Dann Co.*, 321 Md. 275, 582 A.2d 981, 988–89 (1990); *James D. Shea Co. v. Perini Corp.*, 2 Mass.App. 912, 321 N.E.2d 831, 832 (1975); *Weyerhaeuser Co. v. Twin City Millwork Co.*, 291

Minn. 293, 191 N.W.2d 401, 403 (1971); *Lyle Signs, Inc. v. Evroks Corp.*, 132 N.H. 156, 562 A.2d 785, 787 (1989); *Unadilla Silo Co. v. Hess Bros.*, 123 N.J. 268, 586 A.2d 226, 235 (1991); *Farwest Steel Corp. v. Mainline Metal Works*, 48 Wash.App. 719, 741 P.2d 58, 60 (1987). *See generally* 72 C.J.S Supp. § 48 at 237 (1975) ("A subcontractor, sub-subcontractor, and laborers and materialmen of a sub-subcontractor, have been held to be within the protection of the bond. However, one who furnishes material to a materialman ... has been held to be outside the protection of the bond." (footnotes omitted)).

We construed the scope of the protections of the CPWA in *South–Way Construction Co. v. Adams City Service,* 169 Colo. 513, 458 P.2d 250 (1969). At issue in *South–Way* was whether a materialman to a sub-subcontractor supplied "materials ... used or consumed by [the] contractor or his subcontractor." *Id.* at 515–16, 458 P.2d at 251 (quoting § 86–7–7, 5 C.R.S. (1963) (since amended and renumbered as § 38–26–107(1), 16A C.R.S. (1982))). We rejected the argument that the statute does not include within its scope the protection of a person who supplied materials to a sub-subcontractor. Rather we held that a materialman to a sub-subcontractor was entitled to the benefit of the CPWA. We reached this conclusion by construing the term "subcontractor" to be broad enough to include a "sub-subcontractor." *Id.* Specifically, we stated: "To construe the term 'subcontractor' so as to exclude a 'sub-subcontractor' from the protection granted by the contractor's bond statute would require us to ignore the purpose of the statute." *Id.* Nowhere in that opinion did we suggest that the mere status of a claimant as "materialman" would be sufficient. In fact the opinion requires a contrary interpretation: if the status as materialman was sufficient to afford protection there would have been no reason for our analysis.[4] We choose to follow our prior decisions and examine both the status of the claimant and the status of the party with whom he is in privity.[5]

Additional support for this reading of the statute is found in our prior decisions interpreting the Mechanics Lien Act. In *Schneider v. J.W. Metz Lumber Co.,* 715 P.2d 329 (Colo.1986), we held that a materialman to a company, where the company was not a "contractor, architect, engineer, subcontractor, builder, agent or other person having charge of the construction," could not claim a mechanics lien on property delivered. *Id.* at 332 (quoting § 38–22–101(1), 16A C.R.S. (1982)). In so holding, we were giving effect to the plain language of the statute:

> Every person who supplies machinery, tools, or equipment in the prosecution of the work, and ... materialmen ... shall have a lien upon the property upon which they ... have furnished materials ... for the value of such ... material furnished, whether at the instance of the owner, or of any other person acting by his authority or under him, as agent, contractor, or otherwise for the ... materials furnished ... whether supplied or done or furnished or rendered at the instance of the owner of the building or other improvement, or his agent....

§ 38–22–101(1), 16A C.R.S. (1982). Section –107, like the mechanic's lien statute, mandates that the claimant be in privity of contract with the contractor, or his representative, express or imputed, for its application.[6] Western, as a supplier to a materi-

**4.** There is a clear distinction between a subcontractor and a materialman. A subcontractor is a person who does work in the assembling of the completed structure. *Cf. Schneider v. J.W. Metz Co.,* 715 P.2d 329, 332 n. 3 (Colo.1986) (where corporation does not work in the assembling of the completed structure the corporation is a materialman). *See Black's Law Dictionary* 1424 (6th ed. 1990) (subcontractor is: "One who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance. One who takes from the principal or prime contractor a specific part of the work undertaken by the principal contractor."). In contrast, a materialman is "[a] person who has furnished materials or supplies used in the construction or repair of a building [or] structure...." *Id.* at 977.

**5.** To suggest that *South–Way* mandates reversal is to suggest that the statutory term "subcontrac-

tor" encompasses "materialman." Such a holding would ignore the clear language of the statute, which obviously differentiates between the two. Moreover, it would ignore the reasoning of *South–Way* where we *did not* construe the term "subcontractor" broadly enough to include materialmen. Acoustical performed no work in the assembling of the completed structure; thus, Acoustical is a materialman/supplier, not a subcontractor on the project. *Cf. Schneider,* 715 P.2d at 332 n. 3. Because Acoustical was a materialman, and Western its supplier, the result in *South–Way* is distinguishable from the result required under the facts of this case.

**6.** *South–Way* holds that the term "subcontractor" is to be construed so as to include "sub-subcontractors" for the CPWA. *South–Way,* 169 Colo. at 516, 458 P.2d at 251. In *Flaugh* we stated that "for purposes of giving effect to the statute, the actions of the subcontractors in pur-

alman, does not stand in this position and is not entitled to the protection of the statute.

### B

Western next argues that by creating a remedy only for claimants who furnish supplies to contractors and subcontractors, *see South–Way*, 169 Colo. at 518, 458 P.2d at 252, but not for claimants who furnish supplies to materialmen, *see Lovell Clay Prods. Co. v. Statewide Supply Co.*, 41 Colo.App. 166, 168, 580 P.2d 1278, 1280 (1978), sections 38–26–105 through –107, as judicially interpreted, deny it the equal protection of the laws.[7]

■ Although the Colorado Constitution does not explicitly guarantee the right to equal protection of the laws, the right to due process of law necessarily includes that right. *People v. Wilhelm*, 676 P.2d 702, 704 n. 4 (Colo.1984); Colo. Const. art. II, § 25. Equal protection guarantees that persons who are similarly situated will receive like treatment by the law. *Harris v. The Ark*, 810 P.2d 226, 229 (Colo.1991); *Bath v. Department of Rev.*, 758 P.2d 1381, 1385 (Colo.1988).

■ The law is well settled regarding the analysis to be applied in an equal protection challenge. In the absence of a classification (1) infringing on a fundamental right; (2) creating a suspect class; or (3) creating a classification subject to an intermediate level of scrutiny, such as illegitimacy and gender, "persons may be treated differently without violating equal protection guarantees if the statutory classification has some reasonable basis in fact and bears a rational relationship to a legitimate state purpose." *Dove v. Delgado*, 808 P.2d 1270, 1274 (Colo.1991). *See Harris*, 810 P.2d at 229–30; *Bath*, 758 P.2d at 1385. The statutes at issue neither infringe on a fundamental right, create a suspect classification, nor are subject to an intermediate level of scrutiny; thus, as Western concedes, we examine its validity under a rational basis review. For a classification analyzed under the rational basis standard of review, it is well settled that a presumption of constitutionality attaches to the statute and the party asserting the unconstitutionality of the statute bears the burden of proving its invalidity beyond a reasonable doubt. *Dove*, 808 P.2d at 1274.

■ The threshold question in any equal protection challenge is whether the persons allegedly subject to disparate treatment are in fact similarly situated. *Harris*, 810 P.2d at 230; *Bath*, 758 P.2d at 1385; *Board of County Comm'rs v. Flickinger*, 687 P.2d 975, 982 (Colo.1984). *See* John E. Nowak, et al., *Constitutional Law* 600 (2d ed. 1983). If they are not situated similarly, then the equal protection challenge must fail. *In re C.B.*, 740 P.2d 11, 17–18 (Colo. 1987). *See Harris*, 810 P.2d at 230.

■ Here, the law has some "special impact on less than all the persons subject to its jurisdiction." *Flickinger*, 687 P.2d at 982. A materialman to a subcontractor is

---

chasing materials and labor are imputed to the principal contractor." *Flaugh,* 157 Colo. at 411, 402 P.2d at 933. Thus, under a straight-forward application of *South–Way* and *Flaugh,* the actions of a sub-subcontractor are imputed to the contractor for purposes of the CPWA. Any assertion to the contrary ignores the prior decisions of this court.

7. Western asserts that it is challenging the statute "as applied," rather than on "its face." This misconstrues the difference in equal protection analysis between an "as applied" challenge and a "facial" challenge to a statute.

    A classification within a law can be established in one of three ways. First, the law may establish the classification "on its face." This means that the law by its own terms classifies persons for different treatment.... Second, the law may be tested in its "applica-

tion." In these cases the law either shows no classification on its face or else indicates a classification which seems to be legitimate, but those challenging the legislation claim that the governmental officials who administer the law are applying it with different degrees of severity to different groups of persons who are described by some suspect trait.... Finally, the law may contain no classification, or a neutral classification, and be applied even handedly. Nevertheless the law may be challenged as in reality constituting a device designed to imposed different burdens on different classes of persons.

John E. Nowak, et al., *Constitutional Law* at 600 (2d ed. 1983). Here, the statutes, as judicially interpreted, create a classification on their face—those who are entitled to the protection of the statute and those who are not.

protected, *South–Way,* 169 Colo. at 516, 458 P.2d at 252; however, a supplier to a materialman is not entitled to the protection conferred by the statute, *Lovell,* 41 Colo.App. at 168, 580 P.2d at 1280.

Next, our cases require examination of two separate and distinct prongs of the rational basis test. The first inquiry is whether there is "a rational basis in fact for the statutory classification." *Harris,* 810 P.2d at 230. We hold that such a basis exists. A subcontractor is "one who has entered into a contract ... for the performance of an act with the person who has already contracted for its performance." *Black's Law Dictionary* 1424 (6th ed. 1990). *See Kobayshi v. Meehleis Steel Co.,* 28 Colo.App. 327, 334, 472 P.2d 724, 728 (1970). Although subcontractors are not in privity of contract with the owner of the property, they are in privity with the general contractor, and their "actions ... in purchasing materials and labor are imputed to the principal contractor" in order to give effect to the CPWA. *Flaugh,* 157 Colo. at 411, 402 P.2d at 933. As such, a rational difference can be drawn between suppliers to subcontractors and suppliers to materialmen.

The second inquiry is whether "the statutory classification bears a reasonable relationship to a legitimate governmental interest." *Harris,* 810 P.2d at 233. It is apparent to us, and Western so concedes, that the state has a legitimate interest in insuring that those who provide labor and supplies for the completion of a public works project are paid. *See* ch. 155, 1923 Colo. Sess.Laws, pmbl., p. 480.

The substance of Western's argument is that the distinction drawn by the legislature in protecting suppliers to subcontractors but not suppliers to materialmen does not rationally further the state's legitimate interests. We disagree. Classes can be treated differently so long as the unequal treatment is based on reasonable differences. *Bushnell v. Sapp,* 194 Colo. 273, 280, 571 P.2d 1100, 1105 (1977). Here, as noted above, reasonable differences are present. Protected claimants are those who have a direct relationship with the contractor or one whose acts in purchasing labor and materials are imputed to him. *See Flaugh,* 157 Colo. at 411, 402 P.2d at 933. Such a limitation protects the public entity, its contractor, and the surety on the public works project from unforeseeable claims.[8] Moreover, a claimant in Western's shoes may generally proceed against the purchaser of the materials. The General Assembly has made the determination that this remedy is adequate to insure payment for suppliers to materialmen of public works projects.

This classification has a reasonable basis and is not constitutionally offensive merely because "in practice it results in some inequality." *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). Accordingly, the judgment of the court of appeals is affirmed.

MULLARKEY, J., dissents.

Justice MULLARKEY dissenting:

I respectfully dissent from the majority opinion denying protection of the public works statute, section 38–26–107, 16A C.R.S. (1982), to Western Metal Lath, a company that supplied dry-wall materials for building Senior High School Number 3 in Academy School District Number 20. I believe that, while we requested briefing

---

8. The General Assembly could reasonably conclude that the prospect of unlimited liability requires that recovery be denied to the supplier of a materialman in that an alternative statutory framework could

impose endless liability on a general contractor, thereby making it liable where it would be virtually impossible for the contractor to protect itself since relations with such entities might be quite remote and unknown. In contrast, the problem of unlimited or unknown liability does not exist where the materialman

contracts with a subcontractor. [Citations omitted]. In that situation, the general contractor may protect itself against loss by requiring the subcontractors, which usually are few in number and well known to it, to post a security bond or it may require evidence that payment has been made for the materials used prior to the paying of the subcontractor. *Lyle Signs v. Evroks Corp.,* 132 N.H. 156, 562 A.2d 785, 787 (1989). *See American Masons' Supply Co. v. F.W. Brown Co.,* 174 Conn. 219, 384 A.2d 378, 383 (1978).

and argument on the constitutionality of sections 38–26–105 to 107, 16A C.R.S. (1982), this case is truly one of statutory interpretation, and the statute must be construed to avoid a conflict with the constitution if possible. *Ohmie v. Martinez*, 141 Colo. 480, 485, 349 P.2d 131, 133 (1960). Properly construed, the statute is constitutional and protects Western.

Western is a manufacturer of metal lath materials which were to be used in the drywall process. Western was contacted by Acoustical and Construction Supply, Inc., to supply these materials. The record indicates that Acoustical itself did not perform any work on the high school project, nor did it perform any work on Western's materials. Instead, the record suggests that Western delivered its products not to Acoustical, but to Hensel Phelps, the general contractor, at the construction site.

Section 38–26–107(1) provides in part that "Any person, copartnership, association of persons, company or corporation that has furnished labor, material, ... or other supplies used or consumed by such contractor or his subcontractor in or about the performance of the work contracted to be done whose claim therefor has not been paid by the contractor or the subcontractor" may file a claim with the public authority on the funds withheld from the contractor. Western claims that it is entitled to protection under this section. There is no dispute that the metal lath provided by Western was incorporated into the project and that Western was not paid. The question is whether Western is a company protected by the statute.

In my view, *South–Way Construction Co., Inc. v. Adams City Service*, 169 Colo. 513, 458 P.2d 250 (1969), is dispositive and requires a judgment in favor of Western. In *South–Way*, a case factually similar to the present one and one which the majority makes no attempt to distinguish, we held that a materials supplier to a "sub-subcontractor" on a public works project was within the scope of protection of 1963 C.R.S. section 86–7–7(3), which is the same as section 38–26–107(3), 16A C.R.S. (1982). *Id.* at 516, 458 P.2d at 251. There we

refused to adopt the construction which the federal courts have placed upon the Miller Act, 40 U.S.C. sections 270a–270f (1988). Instead, we stated that we adhered to "the rule of liberal construction" which we had applied earlier to the public works statute. *Id.* at 518, 458 P.2d at 252. The Miller Act is a similar federal statute which requires performance and payment bonds from contractors on certain federal government construction projects. That statute has been held by the federal courts to extend protection only to the level of a sub-subcontractor, and not to a sub-subcontractor's materialman. *See J.W. Bateson v. United States ex rel. Board of Trustees*, 434 U.S. 586, 98 S.Ct. 873, 55 L.Ed.2d 50 (1978) (sub-subcontractor's laborers not entitled to file Miller Act claim). A sub-subcontractor's materialman is not in privity with the contract between the public authority and the general contractor. Western stands in the same relationship as the *South–Way* claimant and is similarly removed from any direct tie to the public authority/general contractor contract. Thus, the majority's statement that "Section –107, like the mechanic's lien statute, mandates that the claimant be in privity of contract with the contractor, or his representative, express or imputed, for its application," Maj. op. at 879, rests on an unsupportable legal fiction.

In *South–Way*, the claimant under 1963 C.R.S. section 86–7–7(3) (which we also held, in *South–Way*, was an alternate method of relief to an action on the payment bond, 169 Colo. at 518, 458 P.2d at 252) was in privity of contract with neither the contractor nor the subcontractor. Instead, the claimant was a materials supplier to a subcontractor of a subcontractor. Despite the fact that the materials supplier was not an entity that was to be paid by the general contractor or its subcontractor, and arguably not within the protection of the plain language of the statute, we held that such a claimant was entitled to make a claim to the funds withheld under what is now section 38–26–107. Both the claimant in *South–Way* and Western were similarly situated; both were once-removed from being "deemed" in privity of contract under

the majority's construction of the Colorado Public Works Act.

Furthermore, neither the majority in the present case, nor the court of appeals in *Lovell Clay Products Co. v. Statewide Supply Co.*, 41 Colo.App. 166, 580 P.2d 1278 (1978), on which the court below relied, recognizes that section 38–26–107 does not define "subcontractor," and does not contain any mention of "materialmen." By comparison, the mechanics' lien statute and the public contractor's bond section specifically address materialmen. *See* § 38–22–101, 16A C.R.S. (1982) (mechanics' lien statute specifically mentions "materialmen" as persons protected by mechanics' lien), *and* § 38–26–105(1) (specifically mentioning "mechanics" and "materialmen" as persons protected by the payment bond). The majority, as did the *Lovell* court, avoids the *South–Way* decision by rewriting our holding, despite *South–Way*'s plain language: "We hold that a materialman to a sub-subcontractor is within the scope of protection granted under our statutes...." *South–Way*, 169 Colo. at 518, 458 P.2d at 252. The majority, echoing *Lovell*, says that a subcontractor to a subcontractor under the statute (which, as noted earlier, does not define "subcontractor"), was deemed by the *South–Way* court to be simply a subcontractor, therefore entitling its materials supplier to protection under the statute. That was not our holding and I do not see any principled way to distinguish this case (or *Lovell*) from *South–Way*. A materials supplier, such as Acoustical, could easily be considered a "subcontractor," in that it is "[o]ne who takes portion of a contract from a principal contractor or another subcontractor." *Black's*

*Law Dictionary* 1424 (6th ed. 1990); *see also Kobayashi v. Meehleis Steel Co.*, 28 Colo.App. 327, 333–34, 472 P.2d 724, 727–28 (1970) (company that contracted with subcontractor to fabricate precast concrete structural columns away from the construction site held to be a "subcontractor" for mechanics' lien purposes, and not a "materialman"). The difference between a "materialman" and a "subcontractor" is often unclear and does not provide a basis for distinguishing *South–Way*.[1]

The statute does not demand a construction that protects direct suppliers (or their assignees), even though they are no more than intermediaries, while leaving completely unprotected those who actually fabricate and furnish materials to such intermediaries for use in public works contracts. The statute instead, by its plain language, protects *any* person who has furnished materials used or consumed by the contractor or its subcontractor in performing the work. The statute does not require that persons making claims for withheld funds be, or be deemed to be, in privity of contract with the public authority (nor does it include language which requires the use of such a legal fiction); it only requires that such a person has had his or her labor or materials incorporated into the work or consumed in performing the work.[2] In fact, the construction of the statute employed by the majority works an injustice against Western, encouraging American Builders and Contractors Supply Co., Acoustical's successor and assignee, to claim and take money which rightfully belongs to Western. The result is an undeserved windfall to American which bought

---

1. The majority notes that, in *Schneider v. J.W. Metz Co.*, 715 P.2d 329, 332 n. 3 (Colo.1986), we said that a manufacturer of prefabricated log homes performed no work in assembling the structure in the case, and therefore it was "simply a materialman." I wonder, however, if, under the majority's reasoning, had the concrete column fabricator in *Kobayashi* contracted with an intermediary, as Western did here, would it have been deemed to be a materialman. Just as in *Kobayashi*, Western's "materials" were incorporated, apparently directly and without alteration, into the structure.

2. The majority complains that a ruling in Western's favor would open the floodgates to "endless liability on a general contractor." Maj. op. at 881 n. 8. We do not face any such problem here with trying to discern the limits of who is and is not protected under section 38–26–107, because Western is similarly situated with regard to the public authority/prime contractor contract as was the claimant in *South–Way*. Furthermore, here the general contractor did in fact protect itself by requiring Acoustical to give it a Mechanics' Lien Release (which was identical to that given by Hensel Phelps' subcontractors) certifying that its suppliers had been paid.

Acoustical's assets but did not assume its debts.

I also cannot support a construction of this statute which not only allows but actually may encourage fraudulent activities. Statutes such as the one now before us were enacted because of well-known recurrent problems in the construction trade with contractors not paying subcontractors, subcontractors not paying laborers, and both not paying suppliers. The majority's decision invites sharp practices, by allowing materials suppliers to go unpaid simply because the contractor uses an intermediary as a direct materials supplier when that intermediary neither does work on the construction project nor manufactures materials. The possibilities for sham transactions require no great imagination.

Because the statute does not demand the construction placed upon it by the majority, because I believe the majority is ignoring our decision in *South–Way*, and because a straight forward construction of the statute would afford a more just result as well as avoid a constitutional conflict in this case, I dissent.